Central Crosstown R. R. Co. agt. Twenty-third Street R. R. Co. *et al.*

## N. Y. SUPERIOR COURT.

The Central Crosstown Railroad Company agt. The Twenty-third Street Railroad Company *et al.*

*Injunction pendente lite — Constitutional law — Constitutional question not to be determined on special motion — what constitutes a railroad — power to lease or consolidate.*

The act of the legislature passed April 11, 1873 (*Laws of* 1873, *chap.* 199), entitled "An act to authorize the Bleecker Street and Fulton Ferry Railroad Company of the city of New York to extend their railroad tracks through certain streets and avenues in the city of New York," which comprises not only an authority to extend the road as indicated by its title, but also numerous provisions and requirements affecting the management, use, operation and disposition of the road as extended involve no infraction of the constitutional provision which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject and that shall be expressed in the title."

Every statute is presumed to be constitutional, and every intendment is in favor of its validity. Nothing but a clear violation of the Constitution will justify a court in overruling the legislative will.

Although, in a certain sense, the act may be said to embrace numerous subjects, viz. : The extension of tracks through streets and avenues; the acquirement of a right of way, by purchase or lease, through and over private property not included in any street or avenue; the use and operation of the road in connection with others, either under agreement or lease or by virtue of a consolidation therewith; the payment of license fees to the city; the pavement and repair of certain portions of the city streets and the issuing of transfer tickets under arrangement with other railroad companies. And although a separate statute might be framed with reference to each and every one of these separate subjects, and the titles of such statutes respectively might express the particular subject of each, and though the subject of each separate provision might have been expressed in the title of this act, and although the import of this constitutional provision now sought to be applied to the act of 1873 might, perhaps, require it if strictly and literally interpreted, yet *it seems* that no such strict and literal interpretation should be resorted to.

Central Crosstown R. R. Co. agt. Twenty-third Street R. R. Co. *et al.*

A statute which embodies various different provisions relating to a common subject and having a natural, although not necessary, connection therewith and with each other, and which by its title so designates the subject of the entire enactment as that neither the legislature nor the public at large is likely to be mislead or deceived thereby, is not obnoxious to the constitutional inhibition.

Accordingly, *held*, that the Bleecker Street and Fulton Ferry Railroad Company was duly authorized by the act in question to extend its road and construct its tracks in the manner prescribed by the act and to lease all or any part thereof; and in doing so it neither violated, nor threatened, nor was about to violate, any right of the plaintiff, for the protection of which the equitable interposition of the court could properly be invoked.

The act of the legislature, passed May 18, 1875 (*Laws of* 1875, *chap.* 389), entitled "An act to amend the act and the title of an act entitled 'An act to authorize the Bleecker Street and Fulton Ferry Railroad Company of the city of New York to extend their railroad tracks through certain streets and avenues of the city of New York,' passed April 11, 1873," whereby any railroad company is authorized to take a lease of all or any portion of the railroad and extensions of the Bleecker Street and Fulton Ferry Railroad Company, provided the stockholders of that company holding the majority of the stock thereof shall consent thereto, embraces but a single subject, which is sufficiently expressed in its title, and is not amenable to the charge of violating section 16 of article 3 of the Constitution.

The act of 1875 may well be regarded as a general act, in so far as its second section is concerned, inasmuch as it confers upon "any railroad" authority to take a lease of the railroad and extensions of the Bleecker Street and Fulton Ferry Railroad Company, with the assent of a majority in interest of its stockholders, and is therefore not within the constitutional inhibition. There was no necessity to express its subject in its title, and the omission so to do does not avoid the enactment.

Whether the enactment be public or private it does not contravene section 18 of the third article of the Constitution as amended in 1875. It grants no right to lay down railroad tracks. It grants no exclusive privilege, immunity or franchise. The right to lay down tracks had already been granted before the constitutional amendments took effect. The same is true of every privilege, immunity or franchise, the demise whereof was contemplated by the lease which the act of April, 1873, authorized to be made and which the act of May 18, 1875, authorized "any railroad company" to take.

By virtue of a general and public law passed April 13, 1839, entitled "An act authorizing railroad companies to contract with each other" (*Laws of* 1839, *chap.* 218), the defendants, and each of them, had full power

Central Crosstown R. R. Co. agt. Twenty-third Street R. R. Co. *et al.*

and authority to execute and enter into the contract of lease irrespective of the powers conferred by these acts.

Iron tracks or rails securely fastened to the soil, whether of a street or a prairie, constitute a railroad, irrespective of the propelling power by which vehicles are transported thereon; and the use of such a railroad may be contracted for under the act of 1839, without any reference to the question whether such use is to be effected by horses or steam, or any other known or unknown motor, and equally without regard to the nature of the locality through which such road may extend.

The forfeiture of corporate rights is a sovereign prerogative to be enforced only by and in the name of the people of the state acting in their sovereign capacity. It cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation; and the government creating the corporation can alone institute the proceeding, and it can waive a forfeiture; and this it can do expressly or by legislative acts recognizing the continued existence of the corporation.

*It seems*, that the word "road" was not used in the third section of the act of April, 1873, in a narrow or restricted sense or with the intent to postpone the exercise of the power conferred in respect to leasing it until after its construction should have been effected. The power to lease and the power to consolidate relate to "the same" subject and are conferred in the same terms. The right to exercise either power is concurrent and coincident with the right to exercise the other. Either could lawfully be exercised under the act from the date of its passage.

*It seems* doubtful whether, in the face of such an unqualified expression of the legislative will as the statutes in question contain, a preliminary injunction, *pendente lite*, should, in any case, be granted on the mere suggestion that such enactments are inconsistent with the Constitution of the state. The constitutionality of a statute should be litigated at the trial and ought not to be adversely determined on a special motion.

*Special Term, November,* 1877.

MOTION to continue injunction *pendente lite.*

*Simon Sterne* and *Joseph H. Choate,* for plaintiff, in support of the motion.

*Osborn E. Bright* and *John M. Scribner,* for defendants, in opposition.

Central Crosstown R. R. Co. agt. Twenty-third Street R. R. Co. *et al.*

SANFORD, *J.* — On the verified complaint in this action and affidavits corroborative the plaintiff obtained an injunction order restraining the defendants from laying railway tracks to connect or interfere with the plaintiff's railway, and from laying curves or crossings which should curve into or cross the plaintiff's tracks, and from otherwise interfering with the plaintiff's property, tracks or curves by crossing, running into or upon the same until the further order of the court. Such injunction order required the defendants to show cause why the same should not be continued during the pendency of the action. The motion was heard upon amended pleadings of all the parties and upon affidavits on the part of each. It was intimated upon the argument, and indeed appeared by the papers submitted, that, concurrently with the commencement of this suit, the defendants were restrained from laying railroad tracks in the manner proposed by them and prohibited by the injunction order herein by force of a like order made in another action pending in the supreme court between The People of the State of New York and the said defendants, and it was suggested that so long as the last mentioned order continued operative the delay in rendering a decision upon this motion, which then seemed likely to result from my own impaired health and invalid condition as well as from the accumulation of unfinished business before me consequent thereon, would not prejudice the parties or occasion serious inconvenience to them or their counsel. The case has accordingly remained undisposed of somewhat longer than is usual in this court, ample opportunity, however, having been meanwhile afforded to both parties, in repeated instances, to bring the cause to trial at special term where the whole matter in controversy might long since have been determined upon the merits, and more satisfactorily it would seem than by the decision of a mere motion founded on pleadings and affidavits. But the opportunity thus afforded has not yet been availed of, and as the injunction order made by the supreme court at the suit of The People of the State

Central Crosstown R. R. Co. agt. Twenty-third Street R. R. Co. *et al.*

has now been dissolved, it is due to the orderly administration of justice that a decision of the present motion should at once be rendered.

The facts of the case, in so far as they affect the questions involved in the present motion, may be briefly stated as follows: The plaintiff is a corporation organized under the general railway laws of the state of New York and is vested by assignment with the rights, franchises and privileges conferred by chapter 160 of the Laws of 1873, which authorizes certain persons therein named and their assigns to construct and operate railways in the city of New York, through and along certain routes therein specified, including, among others, the route through Fourteenth street, between Broadway and Union square and the Seventh avenue. Pursuant to such authority and under such assignment it constructed, and for two years prior to the commencement of this action operated, a street railway through and along the routes so specified. Two tracks of its railway ran into Fourteenth street from Broadway and Union square and thence along Fourteenth street to and down the Seventh avenue, such tracks beings so adjusted with curves at the street corners as to enable the plaintiff to run its cars thereon without impediment or obstruction.

The Twenty-third Street Railway Company is also a corporation organized under the general railroad act of the state of New York and has acquired, by purchase and assignment, the rights, privileges and franchises conferred by chapter 823 of the Laws of 1869, as amended by chapter 521 of the Laws of 1872, whereby the construction of a railroad through Twenty-third street, in the city of New York, from the North to the East river, is authorized upon certain terms and conditions therein specified. Further rights and privileges, including the right to extend its tracks through certain other streets and avenues, were conferred upon the said corporation by chapter 100 of the Laws of 1863.

By chapter 199 of the Laws of 1876 the defendant The

Central Crosstown R. R. Co. agt. Twenty-third Street R. R. Co. *et. al.*

Bleecker Street and Fulton Ferry Railroad Company, a corporation theretofore organized under the general railway laws of the state of New York and the assignee of the rights and franchises conferred by chapter 514 of the Laws of 1860, was authorized to extend its tracks through various streets and avenues in the city of New York as specified in said chapter, including, among others, University place and thence through Fourteenth street from University place to Ninth avenue, and also from the corner of Fourteenth street and University place, through and along Fourteenth street, with double tracks, to Fourth avenue. By the second section of said act the said corporation was authorized to run upon, intersect and use any portion of other railroad tracks then laid, or which might thereafter be laid, upon the streets and avenues through which it was empowered to construct its railway upon making compensation for the privilege in an amount to be determined in the manner thereby provided. The intent to run upon, intersect or use the plaintiff's tracks otherwise than in accordance with this provision is not averred in the complaint, and is expressly disavowed in the answers of the defendant. By the third section of said act the said corporation was also authorized to lease all or any portion of its road or to consolidate the same with any other railroad companies. A portion of the railroad tracks authorized by said act to be laid was long ago completed and the cars of said company have been daily run thereon for a period exceeding three years last past. In May, 1875, the company undertook to construct other portions of the tracks authorized by the said act, intending to connect the same with the tracks of the defendant The Christopher and Tenth Street Railroad Company in such a manner as to provide a continuous railroad route from Fulton ferry to Christopher Street ferry, but were prevented by proceedings on the part of the plaintiff, whose agents and servants, on or about the 1st day of June, 1875, entered upon the ground at the Christopher Street ferry occupied by the newly-constructed tracks of the defendant The

Bleecker Street and Fulton Ferry Railroad Company and removed the same, substituting in their stead railroad tracks of its own which it has ever since continued to occupy and use, excluding the said Bleecker Street and Fulton Ferry Railroad Company therefrom. Subsequently to such removal of the tracks of the said defendant negotiations were entered into on its behalf for a lease of its railroad and franchises to other parties, but before such negotiations were consummated suits were commenced in the supreme court for the foreclosure of a mortgage upon its property. On the 23d of December, 1875, a receiver of its property was appointed in such action. In March, 1876, the said company presented to the supreme court a petition entitled in the said suits to which was annexed a proposed lease, bearing date January 10, 1876, between the said company and The Twenty-third Street Railway Company, whereby the said Twenty-third Street Railway Company proposed to take by lease all the railroad, franchises and extensions of The Bleecker Street and Fulton Ferry Railroad Company for a term of ninety-nine years. Such further proceedings were thereupon had that by an order of the supreme court made and entitled in said suits leave was granted to the said company to make and deliver the said lease; and thereafter the said lease, which bears date January 10, 1876, was duly executed and delivered. It was provided by the said lease that the lessor therein named, The Bleecker Street and Fulton Ferry Railroad Company, on request of the lessee, should execute such further lease of any portion of said railroad or extensions as The Twenty-third Street Railroad Company might propose, or should join with said last named company in the execution of such lease; and should also, at the request of the said lessee, and at its expense, construct, or contract for the construction of, any part of the demised railroad or extensions not then completed.

Pursuant to these provisions, and at the request of The Twenty-third Street Railway Company, the defendant The

Bleecker Street and Fulton Ferry Railroad Company united with its said lessee in the execution and delivery to The Christopher and Tenth Street Railroad Company of a lease, bearing date November 10, 1876, demising a portion of the railroad and property, rights and franchises previously leased to The Twenty-third Street Railway Company, including the right to construct railroad tracks through Fourteenth street, between Fourth and Tenth avenues; and in accordance with its covenants contained in both the aforesaid leases the said Bleecker Street and Fulton Ferry Railroad Company, on the 26th day of November, 1876, contracted with one William Wharton, Jr., for the construction and laying of tracks over a portion of the route described in said lease to The Christopher and Tenth Street Railroad Company, to wit, in Fourteenth street, between Fourth avenue and Ninth avenue. The said contractor and his workmen thereupon, at the instance of and under his contract with The Bleecker Street and Fulton Ferry Railroad Company, commenced laying such tracks and proceeded with work thereon until interrupted and prohibited by the injunction orders made in this suit and in the said suit in the supreme court, to which reference has already been made.

Prior to the execution and delivery of the lease to The Twenty-third Street Railway Company, and on the 18th day of May, 1875, the legislature amended chapter 199 of the Laws of 1873 by changing the title thereof and by authorizing any railroad company to take a lease of all or any portion of the railroad and extensions of The Bleecker Street and Fulton Ferry Railroad Company, provided the stockholders holding a majority of the stock of said company should assent thereto (*Laws of* 1875, *chap.* 389). This condition was complied with as part of the proceedings upon which the sanction and approval of the supreme court to the lease to The Twenty-third Street Railway Company was obtained. The application for leave to execute such lease was strenuously resisted and opposed on grounds substantially the same

as those now insisted on by the plaintiff, and the same points were also involved in the motion to continue, *pendente lite*, the injunction order made in the suit of The People of the State against the defendants herein. It also appears that in other suits and proceedings to which the defendant The Bleecker Street and Fulton Ferry Railroad Company has been a party litigant and which have been earnestly prosecuted and defended, the validity of the said lease to The Twenty-third Street Railroad Company has been repeatedly assailed and sustained, and that in no case has an adjudication been made or decision rendered adverse to the positions insisted upon by the defendants.

On the part of the plaintiff it is claimed, as the first and principal ground upon which the injunction order in question should be sustained, that The Bleecker Street and Fulton Ferry Railroad Company was never duly authorized or empowered to extend its tracks or to lease all or any part of its railroad, and that the lease executed by that company to The Twenty-third Street Railway Company, as well as the sub-lease to The Christopher and Tenth Street Railroad Company, in the execution of which both The Bleecker Street and Fulton Ferry Railroad Company and The Twenty-third Street Railway Company joined, is *ultra vires* and wholly nugatory and inoperative, (1) for the reason that the provision of the state Constitution (*art.* 3, *sec.* 16) which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject and that shall be expressed in the title" is violated by chapter 199 of the Laws of 1873, which purports to confer upon The Bleecker Street and Fulton Ferry Railroad Company the power to extend its tracks and to lease all or any portion of its road, and (2) for the reason that the act of 1875 amending such act is also unconstitutional and void as infringing the same constitutional provision, and also as violating the requirements of section 18 of the same article. That the act of 1873 is a "private or local" statute is not questioned, but it is claimed,

on the part of the defendants, that it really embraces but one subject, which, within the fair scope and meaning of the constitutional provision, is adequately expressed in its title. The act is entitled "An act to authorize The Bleecker Street and Fulton Ferry Railroad Company to extend their railroad tracks through certain streets and avenues in the city of New York." Its first section specifies the streets and avenues through which such extension may be made, and authorizes the company to lay its tracks through and upon certain property not included in any street upon acquiring the right of way by purchasing or leasing such property. It further provides for the construction of the necessary switches, curves, turnouts and side tracks. The second section authorizes the company, in the use and operation of its railroad as thus authorized to be extended and constructed, to intersect with, use and run upon any portion of other railroad tracks laid or to be laid upon the streets and avenues, and directs how the amount of compensation therefor shall be ascertained and determined in case no agreement can be made with the owners thereof in respect to such compensation.

The third section extends to the construction, use and operation by the company of the tracks thus authorized the same rights and privileges which it already possessed under former grants and laws, and authorizes the use of the entire road in connection with the roads of other companies, the leasing of all or any portion of it and its consolidation with other railroad companies. It also provides for the payment to the city corporation of a license fee for each car used upon such extension, and requires the company to pave and keep in repair the surface of the streets within the extended tracks.

The fourth section directs as to the rates of fare to be charged, the running of cars as often as the convenience of passengers may require and the issue of transfer tickets under such arrangements as may be made with other companies.

It will thus be seen that the act comprises not only an authority to extend the road as indicated by its title, but also

numerous provisions and requirements affecting the management, use, operation and disposition of the road as extended. These provisions and requirements all relate to a single subject, viz., the railroad of The Bleecker Street and Fulton Ferry Railroad Company as proposed and thereby authorized to be extended, and yet each separate provision and requirement may, in a certain sense, be said to relate to a separate subject of its own, not necessarily, perhaps, although naturally connected with, or incident to, the proposed extension. In a certain sense the act may, therefore, be said to embrace numerous subjects, viz.: The extension of tracks through streets and avenues; the acquirement of a right of way, by purchase or lease, through and over private property not included in any street or avenue; the use and operation of the road in connection with others, either under agreement or lease or by virtue of a consolidation therewith; the payment of license fees to the city; the pavement and repair of certain portions of the city streets and the issuing of transfer tickets under arrangement with other railroad companies. A separate statute might be framed with reference to each and every one of these separate subjects, and the titles of such statutes, respectively, might express the particular subject of each. So, also, the subject of each separate provision might have been expressed in the title of this act. It is obvious that such minute and detailed legislation would be attended by and would occasion serious difficulty and vast inconvenience, and yet the import of the constitutional provision now sought to be applied to the act of 1873 might, perhaps, require it if strictly and literally interpreted. The inference is that no such strict and literal interpretation should be resorted to. The fundamental law exists for the benefit and convenience of the people and should be so construed as to effectuate their intent in adopting it. The object and purpose of the constitutional provision now under consideration is sufficiently manifest from its terms. The combination in a single private or local act of various matters having no necessary or natural

connection with each other and foreign to the subject of the act, as indicated by its title, would inevitably lead to legislative bargaining and corruption to the improper combination of diverse and conflicting pecuniary interests for the consummation of private ends adverse to the general good and not readily attainable, except through such combination, to the unadvised insertion in local statutes of apparently small importance of matters affecting the public and really requiring careful, deliberate and general examination and discussion. In short, to fraudulent legislation which, under the guise of a private or local act apparently relating only to a particular township, estate or individual, might, in reality, affect public policy and prejudice the welfare or impair the interests of the community at large. It was to prevent such disastrous consequences by enabling legislators and the public to comprehend at a glance and by mere reference to the title the general subject of every local or private legislative enactment, as it should be proposed or adopted, that the sixteenth section of article 3 was inserted in the Constitution. Of course any legislation of the character above suggested tending to defeat the objects and purposes of this wise and beneficent constitutional provision and substantially infringing or violating its requirements, must be held nugatory and void. But a statute which embodies various different provisions relating to a common subject and having a natural, although not necessary, connection therewith and with each other, and which by its title so designates the subject of the entire enactment as that neither the legislature nor the public at large is likely to be misled or deceived thereby, is not obnoxious to the constitutional inhibition. Numerous adjudications by the courts of the state, including its highest and most authoritative tribunal, fully sustain the views thus expressed (*Connor* agt. *The Mayor*, 1 *Seld.*, 285 ; *Sun Mut. Ins. Co.* agt. *The Mayor*, 4 *id.*, 241; *People* agt. *Lawrence*, 41 *N. Y.*, 139 ; *People* agt. *McCann*, 16 *id.*, 58 ; *People* agt. *City of Rochester*, 50 *id.*, 553). Tested by these cases

and the principle they establish, the provisions of chapter 199 of the Laws of 1873 involve no infraction of the constitutional provision which prohibits the enactment of any local or private statute embracing more than one subject.

The various provisions of that act, to which detailed reference has been made, all relate to a single subject, viz., the extended railroad of The Bleecker Street and Fulton Ferry Company for the construction, use, management and operation whereof the act was intended to provide. That subject is clearly expressed in, and indicated by, the title of the act, and neither the legislature nor the public can justly be deemed to have been misled or deceived by the title with respect to any provision contained in the body of the enactment. The use and operation of the railroad through the instrumentality of a lease and by the agency of lessees is no more foreign to the subject of the act than either or any of its other provisions, all of which relate to the construction, use and operation of the extended road, for the construction, use and operation of which the act was intended to and does provide conformably to the purpose expressed in its title. "Every statute is presumed to be constitutional, and every intendment is in favor of its validity." "Nothing but a clear violation of the Constitution will justify a court in overruling the legislative will" (*In the Matter of the N. Y. Elevated R. R. Co., court of appeals*). I am, therefore, of opinion that The Bleecker Street and Fulton Ferry Railroad Company was duly authorized by the act in question to extend its road and construct its tracks in the manner prescribed by the act and to lease all and every part thereof, and that, in so doing, it neither violated nor threatened, nor was about to violate, any right of the plaintiff, for the protection of which the equitable interposition of the court could be properly invoked.

It is, perhaps, not unworthy of remark that the act of March 28, 1873 (*Laws of 1873, chap.* 160), by virtue whereof the plaintiff enjoys its own franchises, contains numerous

provisions and embraces a variety of collateral matters not necessarily, although naturally, connected with and incident to the general subject expressed in its title. Tested by that strict and literal construction of the constitutional requirement as to the subject-matter and the titles of local and private acts which is invoked in support of this motion, it may well be that the very franchises and privileges, against an alleged infraction whereof the protection of the court is solicited, would prove to be no less vulnerable than those conferred by the act of April 11, 1873, which is now so confidently assailed.

The same principle and reasoning upon which the act of April 11, 1873, is upheld as not in derogation of section 16 of article 3 of the state Constitution are equally applicable to the act of May 18, 1875, whereby any railroad company is authorized to take a lease of all or any portion of the railroad and extensions of The Bleecker Street and Fulton Ferry Railroad Company, provided the stockholders of that company holding a majority of the stock thereof shall consent thereto (*Laws of* 1875, *chap.* 389). It is not contended that the amendment thereby effected by the title to the act of 1873 imparts any additional validity to the amended act, but the defendants merely claim that if that act in authorizing The Bleecker Street and Fulton Ferry Railroad Company to lease its road failed to confer upon other railroad companies, by necessary implication, authority to accept such lease as is thereby authorized to make, such authority is, by virtue of the amendment made in 1875, as efficiently conferred as if it had originally been embraced in the provisions of the act of 1873. I am of opinion that the act of 1875, like that of 1873, embraces but a single subject, which is sufficiently expressed in its title, and is not amenable to the charge of violating section 16 of article 3 of the Constitution. Had its provisions been originally incorporated in the act of 1873, either under the original or amended title, they would have added no new subject to the one embraced therein, and that act

would still have been free from objection as an infraction of
the Constitution. The effect of the amendment is rather to
restrict than enlarge the authority conferred upon The
Bleecker Street and Fulton Ferry Railroad Company by the
original act, and its purpose is but to carry out, subject to
such restriction, the objects originally aimed at therein. Its
provisions, therefore, cannot be deemed to endanger any of
the mischiefs which the constitutional inhibition was designed
to frustrate and prevent, and I am unable to perceive in the
section of the Constitution referred to any sufficient ground
for declaring it invalid. All the provisions of both acts are
in *pari materia*, and their subject-matter is expressed in their
titles respectively.

.But the act of 1875 may well be regarded as a general act,
in so far as its second section is concerned, inasmuch as it
confers upon " any railroad " authority to take a lease of the
railroad and extensions of The Bleecker Street and Fulton
Ferry Railroad Company with the assent of a majority in
interest of its stockholders (*The People* agt. *McCann*, 16 *N.
Y.*, 60; *Williams* agt. *The People*, 24 *id.*, 405; *Conner* agt.
*The Mayor*, 5 *id.*, 285). The recent case in the court of
appeals already referred to, entitled " *In the Matter of the
New York Elevated Railway Company*," contains an inter-
esting and valuable illustration of the distinction between
general and private or local enactments. "A law may be
general," it was there said, " without affecting all the people
of the state. A law regulating the rights of married women,
or of minors, or adults or aliens would be general, and it
would be general although confined to persons in being at
the time of its passage. So a law conferring new rights upon
all existing insurance companies, or railroad companies or
manufacturing companies would be general. A law which
relates to persons or things as a class is general, but one
which relates to particular persons or things of a class is spe-
cial and private." By extending the privilege of becoming
the lessee of The Bleecker Street and Fulton Ferry Company

to any railroad company, the second section of the act of 1875 conferred new rights upon "all existing railroad companies" in the state, and its provisions are, therefore, neither local or private.   So far as these provisions are concerned the act is a public act and not within the constitutional inhibition.   There was no necessity to express its subject in its title, and the omission so to do does not avoid the enactment.

If the enactment be public it obviously contravenes none of the provisions of the eighteenth section of the third article of the Constitution as amended in 1875.   Whether public or. private, it does not contravene the provisions of that section. It grants no right to lay down railroad tracks.   It grants no exclusive privilege, immunity or franchise.   The right to lay down tracks had already been granted before the constitutional amendments took effect.   The same is true of every privilege, immunity or franchise, the demise whereof was contemplated by the lease which the act of April 11, 1873, authorized to be made, and which the act of May 18, 1873, authorized "any railroad company" to take (*See Gilbert Elevated Railroad Company* agt. *Kobbe, court of appeals, September*, 1877).

I am further of opinion that, irrespective of the powers conferred by these acts, and under and by virtue of a general and public act passed April 13, 1839, entitled "An act authorizing railroad companies to contract with each other" (*Laws of* 1839, *chapter* 218) the defendants and each of them had full power and authority to execute and enter into the contract of lease, to which exception is taken by the plaintiff, as unauthorized by law, and therefore nugatory and void. Its provisions are broad enough to comprehend all contracts between railroad corporations, for the use of their respective roads, in a manner not inconsistent with the provisions of the charter of the corporation whose railroad is to be used under the contract.   I can perceive no substantial reason why the use by one corporation of the railroad of another, under and pursuant to the terms and conditions of that particular form

of contract ordinarily designated as a lease or demise should be regarded as unlawful and unwarranted by this enactment, if the charter of the corporation whose road is to be leased contains no express prohibition against leasing its property; certainly no such reason exists where authority to lease is expressly and in terms conferred. In *Fisher* agt. *New York Central and Hudson River Railroad Company* (46 *N. Y.*, 644), it appeared that an agreement was entered into whereby The Buffalo and Niagara Falls Railroad Company leased to The New York Central Railroad Company its entire property and franchises, for the full unexpired term of its corporate existence.

The validity of that contract was claimed by virtue of the enactment now under consideration, and GROVER, J., by whom the decision of the court in that case was rendered, expressed the opinion that the contract was within the powers conferred by this act, and therefore valid, and that under it the Central company acquired the right to run cars upon the demised road under the franchise of the Niagara Falls company.

But it is further insisted on the part of the plaintiff that the act of 1839 relates only to railroads on which steam is the propelling power, and has no applicability to street railroads ; (1) because such roads were not in existence or operation at the time of its passage, and (2) because a street railway company never owns a "road" which can become the subject of a demise, and has, at best, but a mere usufruct of the street which it shares in common with others. This position is tenable neither in fact nor in law. There is nothing in the papers before the court to show that street railways were not in existence in the state prior to 1839, and the fact is alleged to be otherwise. The legislature has too often, by express enactment, sanctioned and authorized the demise of street railroads to admit of any doubt as to the feasibility of such demise. If a street railway company can hold and enjoy nothing more than a mere usufruct in the street, which it

Central Crosstown R. R. Co. agt. Twenty-third Street R. R. Co. *et al.*

shares in common with others, and which is not susceptible of demise, it is difficult to perceive any principle upon which legislative grants of such usufruct are assignable, or any ground upon which the enjoyment of such usufruct can be protected by injunction.

Iron tracks or rails securely fastened to the soil, whether of a street or a prairie, constitute a railroad, irrespective of the nature of the propelling power by which vehicles are transported thereon; and the use of such a railroad may be contracted for under the act of 1839, without any reference to the question whether such use is to be effected by horses, or steam, or any other known or unknown motor; and equally without regard to the nature of the locality through which such road may extend. Most of the steam railroads in this state pass through and over city streets, in the soil of which the corporations owning them have no title, and their tracks are, and well may be, used in common by connecting roads under the authority of the act of 1839. The Christopher and Tenth Street Company, equally with the other defendants, is protected by the authority conferred by that act.

It only remains to consider a few additional and minor objections to the exercise by the defendadts of the powers conferred by the legislature in the enactments we have thus far examined. One such objection consists in the alleged forfeiture by The Bleecker Street and Fulton Ferry Railroad Company of its corporate franchises (1) by non-user, (2) by insolvency. The disposition which was recently made by the court of appeals of a like objection, *In the Matter of the New York Elevated Railroad Company*, already cited, renders superfluous any extended discussion of this point. The forfeiture of corporate rights is a sovereign prerogative to be enforced only by and in the name of the people of the state, acting in their sovereign capacity. It "cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corpora-

tion; and the government creating the corporation can alone institute the proceeding; and it can waive a forfeiture, and this it can do expressly or by legislative acts recognizing the continued existence of the corporation" (*In re N. Y. Elevated R. R. Co., ut supra*). The alleged forfeiture by The Bleecker Street and Fulton Ferry Railroad Company of all or any part of its corporate rights, powers or privileges is therefore impertinent to the present controversy. If it were material, the successive legislative enactments in recognition of its existence, and in confirmation and extension of its powers, to which reference has already been made (*Laws of* 1873, *chaps.* 199, 647; *Laws of* 1875, *chap.* 389), would operate as a remission and waiver in respect of any cause of forfeiture previously existing. There is, moreover, no sufficient evidence before me to establish either alleged ground of forfeiture. But it is urged that the lease purports to demise not merely the "road" of The Bleecker Street and Fulton Ferry Company, pursuant to the authority conferred by statute, but the right, power and privilege of constructing, operating and using the same; and a distinction is sought to be maintained between a "road" actually constructed and furnished and a mere route, over which there may exist the lawful right of extending tracks and building a "road," but which, for all the practical purposes of railway traffic, is but a figment of imagination. It seems to me, upon mature reflection, that the word "road" was not used in the third section of the act of April, 1873, in a narrow or restricted sense, or with the intent to postpone the exercise of the power conferred in respect to leasing it until after its construction should have been effected. The object of the entire statute was to authorize and effect the extension of The Bleecker Street and Fulton Ferry Company's railroad, and the powers thereby conferred must be deemed to have been conferred because essential, or, at all events, auxiliary, in the judgment of the legislature, to the successful accomplishment of this end. The franchises possessed by the company prior to this enact-

ment had been acquired by assignment, and not by direct grant from the legislature. The element of assignability had been imparted to, and impressed upon, them by the original enactment, whereby they were conferred upon the company's grantors or their assigns. With respect to these franchises, and the road to be constructed under them, it would seem that there was, in their very nature, no need of an enabling act in order to effectuate their transmission either by an absolute conveyance or a demise. Lest the direct grant of authority to extend its tracks should, in the absence of express legislation on the subject, be construed as in the nature of a personal trust, incapable of a delegation to others, and therefore incompatible with the rights and powers previously existing with respect to so much of the road as was already constructed, it was provided that the company should exercise, with respect to the proposed extension, the rights and privileges it already possessed under former grants and laws; and, the better to effectuate the purpose of the legislature in authorizing the extension of the tracks, and thus securing to the community the benefit of railway transit through the designated route, the company was authorized to lease all or any portion of its road, or to consolidate the same with any other railroad companies. It is manifest that, whatever may constitute the subject-matter of consolidation with other railroad companies, is identical with what the legislature intended should be included in the demise which it authorized to be made. There is nothing in the terms of the statute, or in the policy of which it is a recognition and furtherance, which indicates a legislative intent to preclude consolidation with other companies so long as the tracks of the extended road might remain unlaid. The power to lease and the power to consolidate relate to " the same subject," and are conferred in the same terms. The right to exercise either power is concurrent and coincident with the right to exercise the other. I am of opinion that either could lawfully be exercised under the act from the date of its passage.

These are the only grounds which have been urged as derogating from the statutory authority of the defendants to perform the acts enjoined which I deem it important to discuss. It may well be doubted whether, in the face of such an unqualified expression of the legislative will as the statutes in question contain, a preliminary injunction, *pendente lite*, should in any case be granted on the mere suggestion that such enactments are inconsistent with the Constitution of the state. The constitutionality of a statute should be litigated at the trial, and ought not to be adversely determined on a special motion (*People* v. *Tweed*, 63 *N. Y.*, 202). The validity of legislation is always to be presumed, and it is only where the conflict between statutory enactments and the fundamental law is palpable and plain that the courts are justified in adjudging the former to be inoperative and void.

The best consideration which I am able to give to the questions involved in this motion has led me to the conclusion that the injunction order heretofore made cannot be sustained, and should not be continued.

Let an order be entered denying the motion, with ten dollars costs.