Kennedy, J.
[After stating the facts as above.] Assuming that the plaintiffs, as owners of the stock represented by them, are in a position to question, on behalf of themselves and such other stockholders as may join with them in this action, the strict legality of the proposed or threatened acts of the defendant, the Central Railroad corporation, then the questions hereafter discussed properly arise and are to be met and disposed of on this application.
The first in the order they have been presented by the respective counsel is: Can the West Shore Company, being by its articles of association, incorporated for the term of one hundred years from February 18, 1880, the day of filing of said articles in the office of the secretary of state, lease its road, property and franchises for the term of four hundred and seventy-five years, a period far beyond its own corporate life ?
Section 5 of chapter 697 of the Laws of 1866 [as amended by L. 1874, c. 240] provides that the corporate existence “ of any railroad corporation now existing or hereafter to be formed under the laws of this State may be extended beyond the time named for that purpose in its act or acts-of incorporation, or in the articles of association of such corporation, by the filing in the office of the secretary of state a certificate of consent to such extension, signed by the holders of two-thirds in amount of the stock held by the stockholders of such corporation, and in every case where such consent has been or shall be so filed, the term of existence of such corporation is hereby extended and declared to be extended for the period designated in such certificate % and each such corporation shall during the period named in such certificate, possess and enjoy all the rights, privileges and franchises enjoyed or exercised by such corporation attire time such certificate was or shall be so filed.”
*203 This provision seems to imply a legislative intent to render the existence of a railroad corporation perpetual, since the facility with which a charter may be extended makes such extension a matter of course in all cases where the same may be deemed desirable, or for the interest of the stockholders. A lease executed by the re-organized West Shore Company for a period extending beyond its corporate existence, as defined in its original articles of association (provided it can be executed as a valid lease of all), is not void for that reason, but, instead, is valid and binding, upon it for the period of its existence at least. Its continuance beyond that time may be dependent upon an extension of its charter, as provided by the act referred to(Wood’s Landl. and T. 107-8.)
The succeeding and most important question is : Can there-organized West Shore Company lease its road and property to the Central Company, to be used by the lessee to carry out the purpose for which the leased road was organized, that is, for the carrying of passengers and the transportation of freight, and for such other purposes as by its-charter the said West Shore corporation undertook and promised the State it would execute and carry out, in consideration of the granting to it of its franchises and privileges ?
Upon the determination of this question many of the-propositions argued by the respective counsel depend and are to be disposed of.
The doctrine contended for by the plaintiffs, that a railroad corporation, being a creature of the statute, takes no power beyond that delegated, and can exercise none except those especially given or necessary to give efficacy to its charter and the privileges conferred, is too well settled to -be at this day the subject of serious question; and unless the power and authority shall be found to be vested in the-West Shore corporation to lease its road, a contract of that character would be ultra vires. This power is not found in its charter or articles of association, it being incorporated- *204 .under the general railroad act, by which no such right is conferred. The privilege, if it exists, must, therefore, be sought for elsewhere and in some other statute. Chapter 218 of the Laws of 1839 contains but a single section, and is as follows: “ It shall be lawful hereafter for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract. But nothing in this act contained shall authorize the road of any railroad corporation, to be used by any other railroad corporation in a manner inconsistent with the provisions of the charter of the corporation, whose railroad is to be used under such contract.”
This is the only act to which my attention has been called, or of the existence of which I am aware, which can be deemed to confer this power; and the authority of the West Shore to lease its road, property and equipments is to be found in this legislative enactment, if it exists, the same being made applicable to all railroads incorporated .under the laws of this State.
Being creatures of the statute, their powers and privil.eges are to be found in the statutes creating them, and judicial authority which bears or may seem to bear upon the question, announced in sister States or in England, serves no other purpose than to inform us of the rule at common law, and to that extent to aid in the construction to be given to the statute of our own State.
I have not had my attention called to the special charter of any railroad corporation which contains an express authority to lease its road, and I am not aware that any such exists. Several general acts passed since 1839 may be referred to in seeking legislative construction of that passed that year, and as tending to show that that act provided for .the leasing for railroad uses and purposes the road of one corporation to another (L. 1855, c. 302; L. 1867, c. 254; L. 1883, c. 383).
The case of Abbott v. Johnstown Horse Railroad Com *205 pany (80 N. Y. 28), on plaintiff’s brief, is a case where the corporation was created for the building and operating of a horse railroad. After it construction it was leased to an' individual who ran it. While doing so, a person was injured through the negligence of one in charge of and" managing a car. The injured party brought an action against the corporation to recover for the damages sustained. The defense was that the road was being run by the lessee, and that the lessor, the corporation, was not liable. The court held that there was no power or authority in the cor. poration to lease its road to an individual, and because of a' want thereof the lease was void, and the lessee must be regarded as running and operating the road as agent for the lessor. It was not claimed that the- Act of 1839 was applicable ; but it was claimed that a clause in the act (L. 1864, c. 582), requiring lessees to perform certain acts, etc., because it specified among lessees other railroad companies and person or persons, that the power to lease to individuals might be inferred. The court say the act does not profess to confess the power to lease, and is therefore only applicable when such power has been otherwise obtained. The case was disposed of upon the ground that there was no power anywhere given in our statutes to a railroad corporation to lease its road to an individual, and to thereby relieve itself from-the obligations it incurred by the acceptance of its charter.
In the case of Troy & Boston R. R. Co. v. Boston, Hoosac Tunnel & Western R. R. Co. (86 N. Y. 107), it appeared that the lease of the road involved was for the purpose, and so understood by both parties to be, not for the use of the leased road for railroad purposes, but with the view and to the end that the road should be abandoned for all purposes, and to wholly deprive the public of its use as a railroad. The courts say a lease for such a purpose and with that intent, is not authorized by chapter 218 of the Laws of 1839 before quoted, since that act especially provides that the contract, to be within its provisions, must be a contract for the use of the leased road in the manner, and as provided- *206 by its charter. Instead of denying the authority of one railroad to lease to another, for use and to be used as a railroad, and with intent that the lessee shall perform all the obligations the lessor is under, it may fairly be said that it affirms the existence of such authority (See opinion of Danforth, J.).
The case of Marie v. Garrison (13 Abb. N. C. 210, 232), cited by the plaintiff’s counsel, was a case pending before Judge Dwight as referee; and his opinion is entitled to great weight as that of a very learned lawyer. The question before him was an application made upon the trial to ■ exclude certain evidence which had been offered, and was interlocutory in its nature. The enunciation of his opinion ■ of a want of power- on the part of one railroad company to lease its property and franchises to another railroad company, although expressed in doubtful language, is entitled to just consideration in seeking a correct conclusion upon the question involved.
I have examined with much care other cases to which my attention has been called by the learned counsel for the plaintiff, both of our own State and elsewhere, but find nothing in them to disturb my own judgment as to the proper construction to be given the Act of 1839, fortified .as it is by a series of authorities of our own court of appeals, .and which I am' fain to believe removes the question from the realm of doubt.
In Fisher v. N. Y. Central, &c. R. R. Co. (46 N. Y. 644), the question as to the construction to be given to the act of 1839 was directly before the court. It is there held that this statute authorized the leasing of one railroad to another, such lease contemplating a use by the lessee of the leased road for railroad purposes. In the opinion, Gboveb, .J., says: On December 23, 1853, the New York Central Company entered into an agreement with the Buffalo and Niagara Falls Company, by which (if valid) the former acquired from the latter the right to use the road and prop•erty connected therewith and its franchises, during the *207 existence of -the latter corporation. (The exact nature of the contract made between the two corporations is stated in the case, as follows: On December 22, 1853, an agreement was entered into-between the New York Central Railroad Company, the Buffalo and Niagara Falls Railroad Company, and the Lewiston Railroad Company, in and by which the Buffalo and Niagara Falls Railroad. Company leased to the New Fork Central Railroad Company its entire property and franchises for the full and unexpired term of its corporate existence. One of the questions .argued was as to the validity of this lease. See respondent’s brief).
' The court proceeds to say : “ The validity of this contract is claimed by virtue if the act authorizing railroad companies to contract with each other (Laws of 1839, c. 218). That act contains but a single section, providing that it shall be lawful hereafter for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed by such contract, but that nothing in the act contained shall authorize the road of any railroad corporation to be used in a manner inconsistent with the provisions of the charter of the corporation whose railroad is to be used under such contract. I think the contract made was within the powers conferred by this act, and therefore valid, and that under this contract the Central ■Company acquired the right to run cars theretofore in use by the Niagara Falls Company under the franchise of the latter company.”
In Woodruff v. Erie R. R. Co. (93 N. Y. 609), Ruger, Ch. J., delivering the opinion of the court, says : “ The instrument by which the plaintiff acquired an interest in the property of the Erie and Genesee Valley Railway Company, which was a corporation duly organized to build and operate the railroad in question, must be regarded for the purposes of this action, as a simple lease of the property for an .agreed annual rental of $8,400, which the plaintiff Wood- *208 ruff especially covenanted to pay therefor. The manner of payment was that the plaintiff should pay the interest to-whomsoever due upon a certain mortgage for $120,000, given by the Erie and Genessee Valley Railway to certain parties, etc. ... We do not think that either of those leases (referring to the above and another not important to-specify), were void as being either malum in se, or malum prohibitum, or contrary to public policy. Neither do we think that they can be avoided by the respective lessees thereof, on account of any want of power on the part of the-respective lessors to make such contract.....Whatever may be the rule in other States or in England, the public-policy of this State, as manifested by numerous acts of the legislature, has always been not only to afford the fullest scope for the consolidation and re-organization of non-competing railroads and railroad corporations, but also for the-transfer of the use of such roads and their franchises by one-corporation to another.”
Referring to the act of 1839, the learned Judge says: “ This act has never been repealed, and has been held by this court to confer power upon railroad corporations not only to acquire, but also to transfer to other railroad corporations by lease the exclusive right to enjoy the property and privileges of the lessor in such contract ” (Citing Fisher v. N. Y. Central, &c. R. R. Co., 46 N. Y. 644 ; People v. Albany & Vt. R. R. Co., 77 N. Y. 232 ; Troy & Boston R. R. Co. v. Boston, Hoosac Tunnel, &c. R. R. Co., 86 N. Y. 107).
In Central Crosstown R. R. Co. v. Twenty-third Street R. R. Co. (54 How. Pr. 168, page 183), Judge Saítdfobd,of the superior court, says: “I am further of the opinion that, irrespective of the powers conferred by these acts, and. under and by virtue of a general and public act, passed April 13, 1839, the defendants and each of them had full' power and authority to enter into the contract of lease.”
I have made these copious extracts from the cases cited because of the great urgency with which the learned counsel for the plaintiff has pressed upon the court, both in his- *209 brief and upon the argument, that the proposed lease of the West Shore Railroad by the Central Railroad was ultra vires and void.
In my judgment it is too late in this State to question the right and power of one railroad corporation to lease its property and franchises to another railroad corporation, provided the same is to be used by.the lessee for the purposes-defined in the charter of the lessor, and that this right and power may be exercised in all cases, provided there is no-prohibition against their exercise contained in the charter of either company.
If right in the above conclusion, it necessarily, follows that the N. Y. C. & H. R. R. Co., has the right to take a lease of the West Shore, to use its road for the purposes for which it was chartered, and to undertake to discharge the obligations which such charter imposed, unless there is found some impediment created by the peculiar location of said roads in respect to each.other.
It is urged that because the said roads are parallel roads, running in close proximity to each other, each extending through the centre of the State from its respective confines, and being, in fact (as must be conceded), in all respects competing roads, the one cannot lease the other or enter into a-contract for its use, whatever construction may otherwise be given to the Act of 1839.
The argument in support of this position is founded in. the main on section 9, of chapter 917, of the Laws of 1869. The act is entitled “An Act authorizing the consolidation of certain railroad companies.” The first section of the act defines its purpose, and, as amended by' the Laws of 1881, chapter 685, reads: “It shall and may be lawful for any railroad company or corporation organized under the laws of this State, or of this State and any other State, and operat- - ing a railroad or bridge either wholly within, or partly within, and partly without this State, to merge and consolidate its capital stock, franchises and property with the capital stock, franchises and property of any other railroad - *210 company or companies organized under the laws of this State, or under the laws of this State and any other State, or under .the laws of any other State or States, whenever the railroads or branches or any part of the railroad or branches of the ■companies or corporations so to be consolidated shall or may form a continuous and connected line of railroad with each other, or by means of any intervening railroad, bridge, or ferry.” The succeeding sections relate to the manner of perfecting such consolidation in detail; then comes section 9, as follows : “Xo companies or corporations of1 this State, whose railroad runs on parallel or competing lines, shall be authorized by this act to merge or consolidate.”
The leasing of one railroad by another, whether for a longer or shorter period, is not a merger or consolidation. The term lease implies the continued existence of the corporation, the lessor, with all its powers and functions, and Ml the rights incident to its creation, and it would be a gross misapplication of terms to hold that a leasing or contract for use by one railroad to another is a merger or consolidation of the two roads.
I am, therefore, forced to the position that it, the West .Shore road, has the authority to execute the lease, and the Xew York Central has the power and right to receive the -same, and to pay rental for the use thereof ; and because said roads are competing roads, there being no statutory .inhibition upon that ground, it is not a reason why a lease may not be executed by the one and accepted by the other.
Upon the assumption that the legislature has authorized ■a lease between two roads situated as these two roads are, the question of public policy does not enter into a consideration of the questions involved here. If the power has been granted by the legislature, although it may be deemed unwise, and in this instance dangerous in its execution, the remedy will be found in another department of the government, and is not lodged in the judiciary.
Several statutes recognize the right, power and author *211 tty of the lessee of a railroad to receive by transfer, from the lessor or other or others owning the same, the capital stock in the leased road (L. 1855, c. 302; L. 1867, c. 254; L. 1883, c. 383).
It is urged that the Central Company has no power or •authority to guarantee the payment of the principal and "interest of the $50,000,000 mortgage bonds, to be issued by the re-organized West Shore Company, and that such contract of guaranty is ultra vires.
The agreement appearing by the "papers submitted, gen .ally stated, is that the new West Shore Company is to lease the Central its road, property and franchises for the period of four-hundred and seventy-five years; and in consideration of the same the Central Company, as rent to be paid by it, undertake to pay the interest on the $50,000,000 during the continuance of the lease, and the principal at the termination of the same. It is not quite apparent why, if the Central has the power to accept the lease and assume the burden it imposes, it may not agree to pay for the use of the ■same in, such manner as by the agreement between the contracting parties shall be provided.
Unless restrained by law every corporation has the incidental power to make any contract necessary to advance the ■object for which it was created (LeGrand v. Manhattan Mercantile Assoc. Co., 80 N. Y. 638).
By the circular issued by Drexel, Morgan & Co., containing a statement of the arrangement between the respective parties, it appears that a portion of the scheme consisted in the transfer of $25,000,000 of the guaranteed re-organized West Shore bonds to the holders of the $50,000,000 •mortgage bonds of the original West Shore corporation in full payment of the latter ; and that those obligations were thereby to be fully cancelled and discharged. The remaining $25,000,000, except such amount as may be necessary for re-organization, are not to be issued except upon the -request of the Central Company to provide (pay) prior liens, necessary terminals and such other property, and for *212 such other purposes as the directors of the said Central Company may from time to time think necessary for the1 security, development and operation of the property leased.
It is shown, generally,, not as definite or as much in-detail as it should, that the debts owing by the West Shore beyond its bonded debt contracted for- the building and equipment of its road, including those. contracted by the receivers, by order, of the court, for running and operating the same since his appointment, and for which a lien ■ exists upon its property, together with the cost of completing the road, including the laying of- a double track, not now completely laid, but which is a part of the plan for the construction of the road, with the terminal facilities at Weehawken, not owned by the West Shore or held and sold under the mortgage, will require and cost $24,000,000, and that the purpose is to appropriate so much of the-$25,000,000 as is necessary for that purpose, and to perfect the West Shore enterprise.
One of the grounds for relief sought by the bill, and included in the demand for judgment, is that the defendant make full discovery on oath of the purpose for which this-last $35,000,000 is to be issued, and what disposition is proposed to be made of them or their proceeds.
Upon the trial, the purpose of the guaranty of these-bonds, and the disposition made or proposed to be made of them, will be the proper subject of inquiry, and the directors of the Central will be compelled to account for all said bonds, and their proceeds; and as it is not suggested that-they are irresponsible or not fully able to respond in damages to the plaintiff for any misappropriation of said bonds- or the proceeds, upon this branch of the case, no ground is presented for sustaining the injunction order.
The plaintiffs are the owners of $32,900, par value of the capital stock of the Hew York Central Company ; the total amount of the capital stock of said corporation is $89,428,300. At a meeting of said stockholders, called to vote upon the question as to whether they- would approve, *213 ratify the proposed agreement, and the action of their ■directors in relation thereto, stockholders representing '$59,270,700 par value voted to so approve and ratify, and $32,900 refused and protested against the carrying out of said scheme.
While it may be conceded that a stockholder in a corporation owning a single share of its stock may call upon the directors for an account of their stewardship, and perhaps ■may, when it is entirely apparent that some act is threatened to be performed by them subversive of his interest, invoke ■the aid of a court of equity to restrain the doing of such acts, although his associate stockholders representing millions of said stock do not concur with him in the view he entertains and the position he takes, but instead assert their belief that the threatened act will, if carried forward to completion, result in the common good to all those associated with him ; still, to entitle him to maintain the position and to demand relief by in junction under such circumstances, the cdurt should only interpose in this summary manner when the claimed wrongful acts are so beyond question, and the case made should be one free from reasonable doubt.
The importance of this case is apparent.when it is realized that the business of the whole country is likely to be •more of less affected by its disposition. If the scheme inaugurated shall be carried forward to its consummation, business will be less likely to be depressed than it will if this great enterprise is suddenly thwarted, and while this aspect of the case should not in any manner control the disposition ■of the question upon strict legal grounds, it does present a view worthy of'some consideration when the matter to be determined is subject to any considerable doubt.
I am the more satisfied with the conclusion to which I am compelled in this case in a realization of the fact that if I have erred in the result the plaintiff’s cannot by reason of such error seriously suffer.
An order will be entered setting aside and vacating the injunction order, without costs.