### UNITED STATES v. CHINA & JAPAN TRADING CO., Limited.

(Circuit Court of Appeals, Second Circuit. January 16, 1896.)

**1. CUSTOMS DUTIES—GIANT UMBRELLAS—ACT OCT. 1, 1890.**
"Giant umbrellas," being many-colored, fantastically decorated articles, of huge size, covered with paper, in the form of umbrellas, but not used or intended for use as such, are dutiable under paragraph 425 of the tariff act of October 1, 1890, as manufactures of paper, and not under paragraph 470, as umbrellas. 66 Fed. 733, affirmed.

**2. SAME—BAMBOO BLINDS AND SCROLLS.**
Bamboo scrolls for wall decoration and bamboo blinds for window shades, composed of strips of bamboo, joined together by cords, are dutiable under paragaph 230 of the tariff act of October 1, 1890, as manufactures of wood. 66 Fed. 733, reversed.

**3. CUSTOMS ADMINISTRATIVE ACT—PRACTICE — FAILURE OF APPELLANT TO APPEAR.**
It seems that if an importer, who has appealed to the board of general appraisers from the decision of the collector as to the classification of merchandise, fails to appear pursuant to such board's notification to show cause why the action of the collector should not be affirmed, the board is entirely justified in affirming the collector's decision, without regard to its correctness.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was an appeal from the decision of the circuit court (66 Fed. 733) reversing the decision of the board of general appraisers concerning certain goods imported by the China & Japan Trading Company, Limited. Affirmed in part, and reversed in part.

Wallace MacFarlane, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty., for the United States.

W. B. Coughtery, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This case involves the proper classification for duty under the tariff act of October 1, 1890, of importations consisting of (1) giant umbrellas, made of paper, and (2) bamboo blinds and scrolls, composed of strips of bamboo, joined together by cords, upon which are stencil decorations of various designs.

The umbrellas were classified for duty under the following provision:

"470. Umbrellas, parasols and sunshades, covered with silk or alpaca, 55 per centum ad valorem; if covered with other material, 45 per centum ad valorem."

By the protest of the importer, it was insisted that they were dutiable under the provision which reads as follows:

"425. Manufactures of paper, or of which paper is the component material of chief value, not specially provided for in this act, 25 per centum ad valorem."

The blinds and scrolls were classified for duty under the following provision:

"230. House and cabinet furniture of wood, wholly or partly finished; manufactures of wood, or of which wood is the component material of chief value, not specially provided for in this act, 35 per centum ad valorem."

By the protest of the importer, it was insisted that they should have been classified under the provision reading as follows:

"460. Manufactures of bone, chip, grass, horn, India rubber, palm leaf, straw, weeds or whalebone, or of which these substances, or either of them, is the component material of chief value, not specially provided for in this act, 30 per centum ad valorem."

The board of general appraisers affirmed the decision of the collector as to all the importations, and, upon appeal by the importer to the circuit court, that court reversed the decision of the board.

The so-called "umbrellas" are a many-colored, fantastically decorated article, imported from Japan and China, of huge size, the frame of which is covered with paper, the paper being the component material of chief value in the article. It resembles the ordinary umbrella, substantially as the miniature ones similarly made, and imported from the same countries, which are used by women for hairpins, resemble parasols. No one pretends that they are the umbrella of trade and commerce, and dealers in those articles do not keep them. They are called "umbrellas" for convenience, but they are not used or designed for use as such. They might as appropriately be called "rainbows."

Notwithstanding these articles were improperly classified by the collector, the board of appraisers was entirely justified in affirming his decision. It appears from the record that the board affirmed the collector because the importer failed to appear pursuant to its notification to show cause why the action of the collector should not be affirmed. The whole scheme of the customs administrative act would be defeated if the importer who complains of the action of the collector can obtain a review of that action by the circuit court without first resorting to the board of general appraisers, and obtaining its decision upon the facts and the law of the case. The point, however, does not seem to have been presented for the consideration of the circuit court, has not been argued in this court, and is not suggested in the assignments of error. Consequently, we are not called upon to consider it. As in other respects, as to these importations, the decision of the circuit court is correct, it should be affirmed.

The scrolls in controversy are used for wall decorations, and the blinds for window shades. Whether they are house furniture or not

we need not inquire. They are made of bamboo, cut into strips, fastened together, and bamboo is the component material of chief value in the articles. The theory of the circuit court was that bamboo is a grass, and that the articles consequently were manufactures of grass. That bamboo is a plant of the family of grasses, growing in tropical countries, is not open to doubt. But, in ordinary signification, and according to commercial understanding, it is wood when of such size as to be sufficiently hard and durable for use as wood is used. It is used for walking sticks and umbrella handles, fishing rods, and many other purposes, when it is of comparatively small size. When of larger size, it is a favorite material for fancy house furniture, and is sometimes used for building purposes. Bamboo articles are commonly dealt in by dealers in wooden ware. In enumerating unmanufactured woods, and placing them in the free list of the same tariff act, congress included bamboo as follows:

"756. Woods, namely, cedar, lignum-vitae, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, and all forms of cabinet woods; in the log, rough or hewn; bamboo and rattan unmanufactured, briar-root or briar-wood, and similar woods unmanufactured, or not further manufactured than cut into blocks suitable for the articles into which they are intended to be converted; bamboo, reeds, and sticks of partridge, hair-wood, pimento, orange, myrtle, and other woods not otherwise specially provided for in this act, in the rough, or not further manufactured than cut into lengths suitable for sticks for umbrellas, parasols, sun-shades, whips, or walking canes."

Thus, it is apparent that congress regarded bamboo as wood for the purposes of the act.

We conclude that the circuit court was in error, and that these articles should have been classified as manufactures of wood. The decision of the circuit court is accordingly reversed.