In re F. W. MYERS & CO.

(Circuit Court, N. D. New York.   July 7, 1903.)

1. CUSTOMS DUTIES—DEFAULT ON HEARING OF APPEAL—WAIVER.
    Where importers who failed through inadvertence to appear on the hearing of an appeal taken by them to the board of general appraisers, which entered a default, and affirmed the action of the collector, afterward applied for and obtained an order from the Circuit Court directing further testimony to be taken, and the government made no objection to such order, and appeared pursuant thereto, and cross-examined the witnesses, it waived the right to raise the objection thereafter that the appellants were concluded by the default before the board of appraisers.

2. SAME—APPEAL TO CIRCUIT COURT—HEARING DE NOVO.
    Under Customs Administrative Act June 10, 1890, c. 407, § 15, 26 Stat. 138 [U. S. Comp. St. 1901, p. 1933], a Circuit Court has power, on appeal from a decision of the board of general appraisers, to direct additional testimony to be taken and to hear the case de novo; and this may be done notwithstanding the entry of a default against the importers, who were the appellants, by the board of appraisers, where such default has been waived.

3. SAME—CLASSIFICATION—SEA GRASS.
    Sea grass, used for making mattresses and upholstery purposes, and which is an entirely different article from sea moss, which is used for food and for medical purposes, and is not known commercially as sea moss, is not dutiable as such under Tariff Act July 24, 1897, c. 11, § 1, Schedule A, par. 81, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1631], but is entitled to free entry under Tariff Act July 24, 1897, c. 11, § 2, Free List, par. 617, 30 Stat. 199 [U. S. Comp. St. 1901, p. 1685], which covers "moss, sea weeds and vegetable substances, crude or unmanufactured, not otherwise specially provided for in this act."

Appeal by the Importers from a Decision of the Board of United States General Appraisers.

This is an appeal by F. W. Myers & Co. from the decision of the board of United States general appraisers, holding that certain importations by the petitioners were of sea moss, and taxable at the rate of 10 per cent. under Tariff Act July 24, 1897, c. 11, § 1, Schedule A, par. 81, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1631].   See G. A. 4561.

Henry J. Cookinham, for appellants.
George B. Curtiss, U. S. Atty.

RAY, District Judge.   The petitioners (appellants) imported sea grass (as they claim) by a number of shipments, all of which the collector classified as sea moss.   This classification was protested, and the petitioners appealed to the board of general appraisers from the decision of the collector.   Through inadvertence the petitioners did not appear upon the hearing before the board of general appraisers, and default was taken against them, and the collector was sustained. Application was thereupon made to the Circuit Court of the Northern District of New York for an order directing further testimony to be taken in the case, and notice of such application was given to the board of United States general appraisers.   No opposition was made to the granting of the order, and no motion has been made to set it aside, and on the first hearing under the order granted directing further testimony to be taken the government appeared, and took part

in the taking of such testimony without raising any objection whatever. The first hearing was held at the office of the collector at Plattsburg on the 26th day of September, 1901, and, no objection to the taking of testimony being made by or on behalf of the government, the petitioners proceeded to give testimony, and the government, through its counsel, cross-examined the witnesses thoroughly, and the hearing at that place was closed without any objection being made on the part of the government. Another hearing was fixed for May 8, 1902, in the city of New York, and on this hearing the counsel for the government for the first time raised the question that the petitioners were concluded by the decision of the board of general appraisers, because they had failed to appear before that board and show cause why the action of the collector should not be affirmed. It would seem clear that by not objecting to the granting of the order directing further testimony to be taken in the case the government waived the default. It had notice of the application for the order, but made no objection, and when the petitioners proceeded to act and take further testimony under and pursuant to the order of the court the government appeared and took part in the proceeding, and only raised the question of default when it saw the case going against the government It must be that the government had the right to waive the default, and, if it had the power it certainly did, for it made no objection to the order, and proceeded to act under and in pursuance of it.

In U. S. v. China and Japan Trading Co., 71 Fed. 864, 18 C. C. A. 335, the importer did not appear before the board of general appraisers, and was defaulted. An appeal was taken, and the court heard the appeal, and rendered a decision upon the merits. In that case the court refers to the fact that the government had proceeded in the case without making the objection that the importers were concluded because of the default before the board of general appraisers. The government proceeded here in this case until the evidence was partially taken and concluded, until one hearing had been had, before raising the question. This court thinks it was then too late.

Again, it would seem clear that the Circuit Court has power on appeal to take additional testimony and hear the case de novo. Act June 10, 1890, c. 407, § 15, 26 Stat. 138 [U. S. Comp. St. 1901, p. 1933], after providing for a review by the court of a decision of the board of general appraisers, and for the return to the court, further provides:

"And within twenty days after the aforesaid return is made the court may, upon the application of the Secretary of the Treasury, collector, importer, owner, consignee, or agent, as the case may be, refer it to one of said general appraisers, as an officer of the court, to take and return to the court such further evidence as may be offered by the Secretary of the Treasury, collector, importer, owner, consignee, or agent, within sixty days thereafter, in such order and under such rules as the court may prescribe; and such further evidence with the aforesaid returns shall constitute the record upon which said Circuit Court shall give priority to and proceed to hear and determine the questions of law and fact involved in such decision, respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, and the decision of such court shall be final, and the proper collector, or person acting as such, shall liquidate the entry ac-

cordingly, unless such court shall be of opinion that the question involved is of such importance as to require a review of such decision by the Supreme Court of the United States, in which case said circuit court, or the judge making the decision may, within thirty days thereafter, allow an appeal to said Supreme Court."

It seems clear that under this section this court has the power, and that in a case like this it is its duty, to take additional evidence, and decide the case de novo, notwithstanding the default, inasmuch as the default was in fact waived. A sovereign state may waive a forfeiture, and if it may waive the forfeiture of a charter of a corporation it may waive any other right. 28 Am. & Eng. Enc. of Law (1st Ed.) 568; Matter of N. Y. El. R. Co., 70 N. Y. 338; People v. Manhattan Co., 9 Wend. 380; Central C. R. Co. v. 23rd St. R. Co., 54 How. Prac. 186; Atty. Gen. v. Petersburg, etc., R. Co., 28 N. C. 456; State v. Real Estate Bank, 5 Ark. 595, 41 Am. Dec. 109. The government had knowledge of all the facts, and when it went to trial without objection, and neither objected to the order nor made motion to vacate, it must be deemed to have assented to the taking of additional testimony and a rehearing of the matter under section 15 of the act of June 10, 1890, above quoted.

When we come to the question whether the appellants imported sea grass or sea moss—that is, whether the article imported was sea grass or sea moss—there seems little ground for contention. By Tariff Act July 24, 1897, c. 11, § 1, Schedule A, par. 81, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1631], it is provided as follows: "Sea moss, ten per centum, ad valorem." Paragraph 617 of the same act (30 Stat. 199 [U. S. Comp. St. 1901, p. 1685])—free list—reads as follows: "Moss, sea weeds and vegetable substances, crude or unmanufactured, not otherwise specially provided for in this act." Under which paragraph of the tariff act does this particular importation fall? It appears that for some time this material in question here had been imported free of duty, and classified as sea grass. At some subsequent time, under instructions from the Treasury Department, it was classified as sea moss, and it was claimed by the government that this article is dutiable as such. The evidence in this case clearly shows that the material in reality is neither sea moss nor is it known commercially as sea moss. It is not well known to the trade as sea moss. The evidence shows that the importations are of a commodity comparatively new in the trade, having no established trade-name except sea grass or eel grass, although it does appear that a few dealers have called it sea moss, believing that it would sell better under that name. The witness Alexander Bertrand, deputy collector at Rouses Point, N. Y., says that most of the importations of this article passed through his office, and were entered as sea grass, and passed through the custom house by him as sea grass, and it has not passed through the custom house except as sea grass. On cross-examination he states that, after receiving instructions from the Treasury Department, he liquidated the entries as sea moss. We then have evidence from pharmacists and other experts acquainted with sea moss or Irish moss and with sea grass, and the evidence seems to be uniform and conclusive that the importations in question are sea

grasses, and not sea moss or Irish moss, and that there is a wide and marked difference between the two articles.

When Congress enacted the tariff act referred to, it evidently had in mind what is technically and really known as sea moss or Irish moss, and also sea weeds and vegetable substances from the sea, including sea grass. On the former it imposed a duty of 10 per centum ad valorem. The latter is on the free list. The fact that sea grass comes from the sea does not make it sea moss. Sea moss and moss are not identical terms. Sea moss or Irish moss is used for food, for medical purposes, and for sizing. Sea grass, the article in question, is used for other purposes—making mattresses, for upholstery purposes, for stuffing parlor sets or chairs—and is not used for a food or for medicinal purposes. The statute places moss, sea weed, and vegetable substances on the free list, while it places sea moss on the dutiable list. Congress thereby recognized the well-known difference between moss, a vegetable substance that comes from the sea, and sea moss itself. These words, sea moss and moss, must be deemed to have been used in their ordinary sense. Sea moss means the article used for food, medicinal purposes, and for sizing, while moss refers to the other article used for the other purposes mentioned. We must assume that Congress knew the meaning of the term.

Again, Congress manifests its intent by placing sea moss in the statute with medical and surgical supplies. Under such a heading it would not have placed a moss or sea weed used for upholstering or other mechanical purposes. Worcester's Dictionary describes Irish moss or sea moss as "a species of sea weed (Chondrus crispus) whose gelatinous qualities render it valuable as an article of food." The Imperial Dictionary, in describing sea moss, describes it as "a marine plant of the genera corallina." The Encyclopedia Britannica says: "Irish moss or Carrageen, is a sea weed (Chondrus crispus), which grows abundantly along the rocky parts of the Atlantic coasts of Europe and North America. It is collected for commercial purposes on the west and northwest of Ireland, and in very large quantities on the coast of Plymouth county, Massachusetts, U. S. It is used for food, medicine, and a thickener for printing calico and for finning beer." We might refer to other authorities on this subject, but it is unnecessary. In reality there is no dispute that there is a wide difference, not only in quality, but in the uses, of sea moss, or Irish moss, and moss, a sea plant. The one is much more valuable than the other, and it is quite probable that in imposing the duty of 10 per centum on sea moss it was intended to protect that particular article, because it grows and is collected for commercial purposes in large quantities on the coast of Massachusetts.

This court has carefully examined the samples of sea moss, and also the samples of the articles imported by the appellant, and finds no difficulty in holding that the imported articles in question are merely sea grass answering to the dictionary and botanical definitions and descriptions of that article. The articles imported do not at all answer the dictionary descriptions and definitions or the botanical definitions and descriptions of sea moss or Irish moss.

In the matter of the protest, 39108b–14104, of Canada Atlantic

Transportation Company, for the Canadian Sea Moss Company, against the decision of the collector of customs at Chicago, Ill., as to the rate and amount of duties chargeable on certain merchandise imported per Grecian, and liquidated September 22, 1898, Wilkinson, general appraiser, said:

"The merchandise is a fiber used for upholstering and filling mattresses. It was assessed for duty at 10 per cent., under paragraph 81, act of July, 1897, and is claimed to be entitled to free admission under the provision of paragraph 566, for 'grasses and fibres, not dressed or manufactured in any manner, and not specially provided for,' or under paragraph 617, which reads: 'Moss, sea weeds, and vegetable substances, crude or unmanufactured, not otherwise specially provided for in this act.' Paragraph 81 reads: 'Sea moss, ten per centum ad valorem.' The merchandise is invoiced as sea moss, and is imported by the Canadian Sea Moss Company. Sea weed is a generic term for sea plants generally, while sea moss is a species of such plants which have a mosslike form. We find that the merchandise is sea moss."

This decision of the general appraiser is entitled to respect, of course; but the appraiser seems to have followed the invoice, and held it to be sea moss, inasmuch as it was invoiced as sea moss by the importer. He did not go into the question of what constitutes sea moss or Irish moss under the botanical or dictionary definitions of those words. But that decision is not binding on this court, for it is the decision of the tribunal from which this appeal is taken. In that case the general appraisers could not well have refused to impose duties on the goods invoiced by the importers as sea moss. This was a declaration by the importers themselves that the articles in question were dutiable, and it does not appear to have been clearly proved or shown that the articles in question were not in fact sea moss but only sea grass. In this case now under consideration the importers declared the importations to be grass, and as a matter of fact they are sea grass, and not sea moss. There is no admission that they are sea moss or dutiable.

The conclusion is that the articles imported in question here are not sea moss, or dutiable as such, but are in fact only sea grass, and fall under paragraph 617 of the tariff act of July 24, 1897, reading as follows: "Moss, sea weeds and vegetable substances, crude or unmanufactured, not otherwise specially provided for in this act," and which articles are on the free list. The result is that the decision of the board of general appraisers must be reversed, and the importations held to fall under subdivision 617 of the tariff act of 1897, and which articles there described are on the free list, and entitled to importation free of duty.

It is so ordered.