## H. MENDELSON & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 31, 1907.)

No. 124 (3,359).

1. CUSTOMS DUTIES—CLASSIFICATION—SILK FABRICS—"IN THE GUM"—"BOILED OFF."

Under Tariff Act July 24, 1897, c. 11, § 1, Schedule L, par. 387, 30 Stat. 186 [U. S. Comp. St. 1901, p. 1669], providing for silk fabrics when "in the gum" and when "boiled off," *held*, that fabrics which on boiling lost from 18 to 27 per cent. in weight were classible under the former, rather than the latter. clause.

2. SAME—APPEAL FROM BOARD OF GENERAL APPRAISERS—INTRODUCTION OF FURTHER EVIDENCE.

As to the rule of U. S. v. China & Japan Trading Co., 71 Fed. 864, 18 C. C. A. 335, that, where an importer fails to appear before the Board of General Appraisers, he may not introduce further evidence in the Circuit Court, on appeal from the Board, under Customs Administrative Act June 10, 1890, c. 407, § 15, 26 Stat. 138 [U. S. Comp. St. 1901, p. 1933], *held*, that that rule does not apply where the importer appeared before the Board and offered some evidence.

3. SAME—EVIDENCE—EX PARTE AFFIDAVIT.

It was an offer of "evidence" where an importer appeared before the Board of General Appraisers and submitted an affidavit made by a person in a foreign country.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For decision below, see 146 Fed. 78, affirming a decision of the Board of United States General Appraisers.

The case involves the construction of Customs Administrative Act June 10, 1890, c. 407, § 15, 26 Stat. 138 [U. S. Comp. St. 1901, p. 1933], respecting appeals from the Board of General Appraisers to the United States Circuit Court, which provides that the court "may" refer the case to a General Appraiser to take "further evidence * * * in such order and under such rules as the court may prescribe." The government contended, in support of the decision of the Circuit Court, that no legal evidence was taken before the Board, and that therefore no "further" evidence should be permitted in the Circuit Court; and it was argued in the brief, with regard to the provision quoted from said section 15: "The whole object of this act was to obtain, in the first instance, from the Board of Appraisers, their decision upon questions of classification; and where no legal testimony is offered before said Board when the case is called for argument, the appellant cannot in his appeal ask that further testimony may be taken. * * * Since the China & Japan Trading Company decision, it has been generally recognized that, where the importers neglected to appear before the Board on due notice, they would be denied the privilege of introducing further evidence in the Circuit Court. The question arises: Are they in any better position, if they do appear and introduce an ex parte affidavit, which would not be received or considered by any court as legal evidence?" In the importers' brief it was urged that the Board had admitted the affidavit as evidence, and that this admission made it competent under the further provision of said section that "all the evidence taken by and before said appraisers shall be competent evidence before said circuit court"; and it was pointed out that this court, in U. S. v. Downing, 146 Fed. 56, 60, 76 C. C. A. 376, had considered and given weight to an ex parte affidavit made by the exporter of the goods. Note U. S. v. Hempstead (C. C.) 153 Fed. 483.

Walden & Webster (Howard T. Walden, of counsel), for importers.
D. Frank Lloyd, Asst. U. S. Atty.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The merchandise in controversy consists of pongee silk in the piece imported from China and generally known as "Shantungs." It is concededly covered by paragraph 387, the relevant parts of which are as follows:

"Par. 387. Woven fabrics in the piece, not specially provided for in this act weighing not less than one and one-third ounces per square yard and not more than eight ounces per square yard * * * if composed wholly of silk, * * * if in the gum, two dollars and fifty cents per pound; if boiled off * * * three dollars per pound." Act July 24, 1897, c. 11, § 1, Schedule L, 30 Stat. 186 [U. S. Comp. St. 1901, p. 1669].

The government contends that the fabrics imported have been boiled off; the importer that they are still in the gum.

Testimony was taken in the Circuit Court, but the judge, upon motion of counsel for the government, expunged it, citing U. S. v. China & Japan Co., 71 Fed. 864, 18 C. C. A. 335. In the case cited the importer offered no evidence in support of his protest, and "failed to appear pursuant to the Board's notification to show cause why the action of the collector should not be affirmed." In the case at bar, however, the importer did appear and offered evidence, which the board found not satisfactory. It consisted merely of an affidavit made by a person in China. The rule laid down in the China & Japan Case does not apply where the importer appears and offers some evidence to support his protest. We are of the opinion therefore that the evidence taken in the Circuit Court was properly in the record and should be considered.

Upon the question in controversy the preponderance of proof is clearly with the importer, disregarding entirely the ex parte affidavit above referred to. It appears that mere inspection and manipulation will not determine whether or not a particular piece of silk has been "degummed"; that is, has been "boiled off," a process which removes the gum. The test universally employed is to weigh the silk, then boil it off, and then weigh it again. If by this process it loses in weight only some small percentage—5 per cent. or less—that fact indicates that it had been already boiled off. If, on the contrary, the loss of weight is heavy—over 15 or 20 per cent.—then it is evident that the silk had not been boiled off before the test was made. The samples of the pieces actually imported in this case had been lost or mislaid before testimony was taken in the Circuit Court; but the importer proved that the importation was of standard goods, and produced samples which he identified as being in all respects similar to the goods covered by this protest, and this testimony was corroborated by the customs examiner. These samples were tested by a disinterested witness from a silk dyeing and finishing company, who cut them into equal parts and boiled off one part of each. A comparison of weights showed a loss varying from 18 to 27 per cent., which, according to the undisputed testimony, would indicate that the sample thus tested had not previously been boiled off.

The only testimony offered by the government is the return of the assistant appraiser and the evidence of a silk manufacturer. The return, however, does not give the conclusion of the appraising officer, but states that the silk, "according to the report of the government analyst, is boiled off." No such report is presented, nor was the analyst examined, and the examiner who prepared the return declined to express his own opinion. The silk manufacturer tested the samples proved in the Circuit Court, and found that they lost less than 2 per cent. by boiling. On cross-examination, however, he admitted that he boiled them in plain water only, while it is shown that the practical business way employed to remove the gum is to boil the silk off in water containing 10 per cent. of olive oil soap. The soap softens up the gum and cuts the greases, thereby making the boiling really effective. Without the use of soap it will not thoroughly remove the gum. Upon this record it seems clear that the silk in controversy had not been boiled off before importation.

The decision of the Circuit Court is reversed.