## J. S. PLUMMER & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

No. 105 (4,217).

1. CUSTOMS DUTIES (§ 85*)—FURTHER EVIDENCE ON APPEAL.

On appeal from the Board of General Appraisers, under Customs Administrative Act June 10, 1890, c. 407, § 15, 26 Stat. 138 (U. S. Comp. St. 1901, p. 1933), importers offered evidence as to items of their merchandise with respect to which they had introduced no evidence before the board. *Held*, that it was inadmissible.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 85.*]

2. CUSTOMS DUTIES (§ 84*)—PRACTICE—PRESUMED ABANDONMENT OF CASE.

At a hearing on an importers' protest by the Board of General Appraisers the importers rested their case after introducing evidence as to a portion of the items included in the importation in question. *Held*, that the board was justified in assuming that the importers had limited their claims to those items and had abandoned it as to the other items.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 84.*]

3. CUSTOMS DUTIES (§ 85*)—OBJECTION TO FURTHER EVIDENCE—ESTOPPEL.

On appeal from the Board of General Appraisers, under Customs Administrative Act June 10, 1890, c. 407, § 15, 26 Stat. 138 (U. S. Comp. St. 1901, p. 1933), the importers had taken some evidence in the Circuit Court, when the government objected to the introduction of further evidence because none had been offered before the board. *Held*, that the fact that this objection might have been raised at an earlier stage of the proceedings did not estop the government from relying on it when raised.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 85.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 160 Fed. 284.

Comstock & Washburn (J. Stuart Tompkins, of counsel), for importers.

J. Osgood Nichols, Asst. U. S. Atty.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The appellants, at various times between September, 1899, and February, 1906, imported into this country, at the port of New York, braids composed of different materials, all of which were assessed for duty at 60 per cent. ad valorem, under paragraphs 339 and 390 of the act of 1897 (Act July 24, 1897, c. 11, § 1, Schedules J, L, 30 Stat. 181, 187 [U. S. Comp. St. 1901, pp. 1662, 1670]). The importers insisted, by their protests, that their merchandise should have been classified under paragraphs 409 and 449 (Schedule N, 30 Stat. 189, 193 [U. S. Comp. St. 1901, pp. 1673, 1678]) and should have paid duty at 15, 20, and 30 per cent. ad valorem, according to the materials of which the braids were composed.

The controversy came on for hearing before the board on February 6, 1906, and the importers introduced six samples taken from importations represented by the six item numbers, as stated by the board in its decision. The testimony was directed solely to these samples.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexe*

As to the other merchandise covered by the protest, no samples were introduced and no testimony of any kind was adduced. It appears from the record that the importers rested their case before the board without making the slightest reference to the braids now in controversy. No excuse was made for the failure to produce samples, no additional time was requested, and no evidence, oral or by affidavit, was given tending to show the general character of the merchandise.

The issue presented by the protests related to all the importations of the appellants, those now in controversy as well as those represented by samples before the board. The board was justified in assuming, as stated in their opinion, that "on the hearing the importers limited their claim to the goods represented on the invoices of the respective protests by item numbers" (stating them). This did not mean that importers had so stated affirmatively, but that their conduct was such that no other inference could be drawn. In contemplation of law it is as if the items now in controversy had alone been before the board, and at the hearing the importers had appeared and offered no testimony. This, then, was the situation when the importers obtained the order for a return of the record and evidence to the Circuit Court, pursuant to section 15 of the customs administrative act (Act June 10, 1890, c. 407, 26 Stat. 138 [U. S. Comp. St. 1901, p. 1933]).

Testimony was taken in the Circuit Court, and samples of the braids now in question were produced and offered in evidence. The counsel who represented the importers before the board testified that he did not at that hearing limit their claim to the samples then produced. He testified further:

"The case was set down peremptorily, and we had to furnish such proof as could be obtained at that time; and the samples that were produced were such as could be obtained at that time."

This testimony was taken without objection, the assistant United States attorney appearing and participating in the proceedings. After this hearing the record contains the following entry:

"Importers rest. Adjourned."

It is at least doubtful whether this testimony was, in any circumstances, sufficient to warrant the court in reversing the decision of the board, for the reason that the witness who testified as to the component material of chief value based his opinion solely upon appearance, no analysis having been made by him. Subsequently, the hearing was reopened by stipulation, to take the testimony of the government examiner, the "counsel for the government reserving the objection that no evidence is admissible in respect to the item numbers, samples of which were not before the board and in respect to which no testimony was taken by the board."

The testimony of the examiner indicates that, if the samples correctly represent the importations, a great majority of them were wrongly assessed and should have been subjected to duty at the rate of 15, 20, and 30 per cent. ad valorem instead of 60 per cent.

In United States v. China & Japan Company, 71 Fed. 864, 18 C. C. A. 335, this court said:

"The whole scheme of the customs administrative act would be defeated if the importer who complains of the action of the collector obtained a review of that action by the Circuit Court without first resorting to the Board of General Appraisers and obtaining its decision upon the facts and the law of the case."

In Mendelson v. United States, 154 Fed. 33, 83 C. C. A. 145, we reaffirmed this rule, but held it inapplicable to cases where the importer appears and offers some evidence to support his protest.

Here, as we have seen, the importers appeared but offered no proof and suffered a default to be taken without objection. The law does not contemplate a review by the Circuit Court unless there is some question of law or fact to review. Unless there is some evidence introduced by the importer there is nothing upon which to base the "further evidence" provided for in the act. In other words, the controversy cannot be presented for the first time to the Circuit Court. If this were otherwise, the importers could, if they chose, ignore the board entirely and try their issues in the Circuit Court. The act of June 10, 1890, was intended to prevent such a proceeding.

It is true that the government did not object to the testimony of the witness who identified the samples. It did, however, object to the testimony of the witness whose statement made it possible for the importers to recover. The objection having been made during the taking of testimony in the Circuit Court and having been insisted on at the hearing in that court, we are of the opinion that the government is not estopped from relying on it because it might have been entered on the record at an earlier date.

It is to be regretted that the importers, by failing to follow the proceedings prescribed by law have been compelled to pay duties apparently not justified by the character of their merchandise. But they have only themselves to blame. There was no difficulty in keeping samples of their importations, and no adequate excuse is suggested by them for not having done so. No notice was given to the board that there was to be a contest regarding these items; no testimony showing their general character was given.

The board were entirely justified in thinking that the importers' claim was abandoned as to the items now in controversy and limited to those referred to in the decision of the board. To grant the importers relief at this late day would establish a precedent which will make it possible for importers to defeat the main purpose of the administrative act.

The decision is affirmed.