CALIF-ASIA CO., LTD. *v.* UNITED STATES (No. 4669)[1]

134

Lawrence, Tuttle & Harper (George R. Tuttle, Lawrence A. Harper, and Walter I. Carpeneti of counsel) for appellant.

Charles J. Wagner, Acting Assistant Attorney General (Joseph F. Donohue and Alfred A. Taylor, Jr., special attorneys, of counsel), for the United States.

BEFORE GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, pursuant to its decision, C. D. 1287, overruling a protest of appellant directed against the classification of certain furniture.

The merchandise consists of chairs and other types of furniture in chief value of cane. One of the chairs is an exhibit before us, the frame of which is made of reed covered with wrapping of cane, and the back and seat thereof are of woven cane.

The Collector of Customs at the port of Los Angeles assessed the involved importation as furniture wholly or in chief value of rattan at the rate of 60 per centum ad valorem, pursuant to a provision in paragraph 409 of the Tarriff Act of 1930.

While several claims are set out in the protest and in a timely amendment thereto, counsel for appellant relies on the contention that the chairs are properly dutiable at the rate of 40 per centum ad valorem under paragraph 412 of the Act and the rest of the involved merchandise at the rate of 25% ad valorem under the same paragraph as amended by the Trade Agreement with the United Kingdom. T. D. 49753.

The involved statutes read as follows:

Par. 409. Reeds wrought or manufactured from rattan or reeds, whether round, flat, split, oval, or in whatever form, cane wrought or manufactured from rattan, cane webbing, and split or partially manufactured rattan, not specially provided for 20 per centum ad valorem. Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind, 60 per centum ad valorem, split bamboo, 1¼ cents per pound, osier or willow, including chip of and split willow, prepared for basket makers' use, 35 per centum ad valorem; all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, 45 per centum ad valorem. (Emphasis added)

Par. 412. Spring clothespins, 20 cents per gross; furniture, wholly or partly finished, and parts thereof, and folding rules, all the foregoing, wholly or in chief

value of wood, and not specially provided for, 40 per centum ad valorem; wood moldings and carvings to be used in architectural and furniture decoration, 40 per centum ad valorem; bent-wood furniture, wholly or partly finished, and parts thereof, 47½ per centum ad valorem; paintbrush handles, wholly or in chief value of wood, 33⅓ per centum ad valorem; wood flour, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for 33⅓ per centum ad valorem.

Par. 412, as amended by T. D. 49753:

Furniture (other than chairs), wholly or partly finished, wholly or in chief value of wood, and not specially provided for . . . 25% ad valorem

The testimony in this case was taken in Los Angeles on June 10, 1942, before the late Judge Thomas J. Walker. It appears that rattan is a tropical vine of the Philippine Islands, Java, Macassar and Borneo growing to lengths as great as 200 feet. It is cut in the jungles where it grows, straightened, bundled, and ordinarily sold in units of 133⅓ pounds.

It appears, without contradiction, that "cane" is the "skin" or "peel" of the rattan vine and that those words are synonymous. The body of the rattan after it has been peeled is known as "reed."

Judge Walker, who wrote the decision for the First Division, stated that counsel for appellant contended that in enacting paragraph 409 the congress distinguished reed, cane, and rattan, and that in providing for furniture manufactured wholly or in chief value of rattan and reed, no provision was made for furniture wholly or in chief value of cane, and such lack indicated an intention that furniture such as is here involved is not to be classified as it was by the collector. Appellant's contention is based upon the italicized portions of paragraph 409 hereinbefore set out.

It was stated in Judge Walker's decision that counsel for the Government agreed with appellant's theory, but based their argument on the ground that appellant had failed to establish by competent testimony that the imported merchandise is in chief value of cane, and because the trial court agreed with the contention of counsel for the Government, the protest was overruled by judgment in accordance with its decision, Abstract 59836, 13 Cust. Ct. 318.

Counsel for appellant filed a motion for rehearing. The motion was granted and the case reopened in Los Angeles on March 13, 1947. Judge Walker passed away in the interim.

In the decision upon which the present judgment was rendered, it is stated that counsel for appellant had "well and fully established that the merchandise invoiced as 'peel furniture' was in fact composed in chief value of cane."

Government counsel appearing at the later hearing evidently disagreed with the Government counsel who appeared at the original trial for the reason that it contended that the provision in paragraph 409 for "furniture wholly or in chief value of rattan, reed, bamboo,

osier or willow, malacca, grass, seagrass, or fiber of any kind," covers furniture in chief value of cane. For the reason that the trial court agreed with Government counsel the protest was again overruled.

In support of its holding the trial court quoted several definitions of rattan and cane from standard dictionaries and observed that the contention of counsel for appellant would be correct if it had been established that the word "reed" as used in the Tariff Act referred only to a reed which is the product of rattan. The court quoted from Webster's New International Dictionary, Second Edition, 1945, as follows:

reed * * * 1. Any of various tall bamboolike grasses or their slender, often jointed, stems; Specif., the ditch reed (*Phragmites communis*) found in marshes throughout temperate and warm regions; also, any other species of *Phragmites* or of *Arundo*, esp. A. donax.

The sole question before us is whether the involved merchandise, in chief value of cane, is dutiable as furniture wholly or in chief value of rattan, as classified by the collector, or, if it is not so dutiable, does it fall within the scope of paragraph 412 as furniture made of wood?

It appears to us that paragraph 409 may logically be separated into two parts, the first of which provides for certain things therein set out and the second, for furniture made from specific materials. It will be noted that the first portion of the paragraph provides for "Reeds wrought or manufactured from rattan or reeds," regardless of their form, and "cane wrought or manufactured from rattan, cane webbing, and split or partially manufactured rattan, * * * ." It may be further noted with respect to furniture that in order to come within the paragraph it must be "wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind."

Certainly, the involved merchandise is not wholly or in chief value of bamboo, osier or willow, malacca, grass, seagrass, or any kind of fiber. Clearly, it is not in chief value of rattan before the bark is removed, nor is it wholly or in chief value of reed.

It appears to us, as was contended by counsel for appellant, that the omission of "cane" from that part of the paragraph 409 relating to furniture means that Congress did not intend to provide duty thereunder on such furniture as is here involved.

In our opinion, Congress clearly distinguished cane, reed, and rattan. We quote from the brief of counsel for appellant the following informative material with respect to "cane" and "reed":

(a) *Encyclopedia Americana* (1950): Wicker weaving and products, vol. 29, pp. 290–3, at page 291:

The rattan vine is harvested by the natives, then cured and classified as to size and texture. The bark is removed and treated thus becoming "cane" and used most extensively as seats for chairs, davenports and the like. The wood part of

the rattan vine inside the bark is also treated and the finished product is known as "reed."

*Ibid.*, Rattan, vol. 23, pp. 227–8, at page 227:

In China . . . the cane is used for saddlery and harness and for wicker-work helmets, said to be sword-proof.

(p 228): The "reed," used in raffia fancy-basket manufacture, is the split inner portion of rattan dressed in cylindrical form like the true reeds.

(b) *Department of Commerce* (1915), *Special Agents' Series* (91), *Rattan Supply of the Philippines*, raised and answered the question (p 28):

. . . Whether the preliminary manufacturing operations of cleansing the rattan and stripping off the fibrous outer portion, so as to produce the two commodities commercially known as "cane" and "reed," can or ought to be done in the islands before export.

### MANUFACTURE OF CANE AND REED

From inquiries received from a number of American manufacturers, a majority of whom are not prepared to use raw rattan, there is evidently a widespread belief that the Philippines are in a position to export these products. How this originated is not quite clear. The fact is that no cane or reed whatever is now manufactured in the islands for export. . . .

(c) *Scientific American*, vol. 121, p. 7, July 5, 1919:

Rattan—Its sources and its services . . . the outer or bark strips become the cane with which our chairs are seated, while the inner or pith strips, by virtue of their extraordinary pliability, have wide use in basketry.

(d) *Scientific American Supplement* 2160, vol. 133, May 26, 1917, pp. 324–5:

The smooth and shining outer portion of commercial rattan stems is remarkably flinty, owing to the deposit of silica in the epidermis. When this covering, which is tawny yellow or brownish on the surface and often delicately striate, is separated into strips it is commercially called cane and is used universally for caning the bottoms of chairs, of couches, and of other articles of furniture. The silicious covering gives the canes extraordinary hardness, and the natives of the East Indies occasionally take advantage of this quality and use the stems for striking fire. Just beneath the lustrous outer layer is the strong inner fibrous tissue (core), which is dull gray or reddish white and is known in the trade as "reed." . . .

It may be noted that in all of those quoted excerpts there is unanimity in identifying "cane," "reed," and "rattan" each as separate articles of merchandise, at least from 1915 to 1950.

While we do not consider it necessary to discuss the legislative history of paragraph 409 for the reason that in our opinion there is no ambiguity in the wording of the statute, nevertheless, we think it is interesting to quote from the Summary of Tariff Information, 1929, schedule 4, page 941, as follows:

Reeds and cane are products of rattan, which is the trade name of a plant gathered for commercial purposes principally in the Malay and Philippine archipelagoes . . . When soaked in water rattan becomes pliable and can be bent or twisted without breaking.

Uses for rattan, outside of its being utilized to produce cane and reeds, include . . . furniture.

The skin or outer layer of rattan when stripped from the core of the stem is the cane of commerce; the remaining cylindrical core is the reed of commerce. Cane is used for certain types of furniture where the frame of reeds, willow or wood, is wrapped with strips of cane. It is also woven into seats and backs for furniture and into seats and backs for railroad coaches, street cars, and motor busses.

It does not seem particularly material to us whether the expression "reed" in the forepart of paragraph 409 refers to materials other than rattan. Clearly, the imported merchandise is not in chief value of reed, any more than it is in chief value of rattan. It is undoubtedly in chief value of "cane" wrought or manufactured from rattan, as was held by the trial court. There is nothing in the paragraph to indicate that cane is made from any other kind of reed or plant.

Counsel for the Government, in their brief, appear to rely heavily upon the case of *Nootka Packing Co.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464, wherein it is stated that

* * * An *eo nomine* statutory designation of an article, without limitations or shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of such article.

In view of that decision, they strongly urge that the provision for furniture wholly or in chief value of rattan covers furniture wholly or in chief value of that material in all of its forms and such forms include rattan reed, rattan cane, and rattan peel.

The position of the Government might be held to be logical except that "cane," "peel," and "reed" made from rattan are not rattan, therefore, in our opinion, their argument fails.

The *Nootka* case, *supra*, had to do with minced razor clam meat in cans which the collector classified as "clams * * * packed in air-tight containers" and assessed with duty at the rate of 35 per centum ad valorem under paragraph 721 (b) of the Tariff Act of 1930. It was claimed by appellant that the imported merchandise should have been free of duty pursuant to paragraph 1761 of that Act, as shellfish, prepared or preserved. In that case, it appeared that the clams, before packing and after shucking, had entrails and part of the necks removed. The remaining meat was cut into small pieces, washed, drained, and put through a mincer. The cans were then half filled with the meat and then completely filled with "partly salt and partly fresh water for seasoning." The canned minced clam was then steamed, sealed, and cooked so that when shipped it was in edible condition. The clam pieces were readily identified as parts of clams.

It will be noticed that the facts in the *Nootka* case, *supra*, and the facts in the instant case are not at all parallel. In the former, there

was nothing edible except cut up clams which had not been changed in identity except as to size. In the instant case there is furniture composed of two distinct and separate articles, both made from rattan. One is cane and the other is reed. No one, it seems to us, can properly call either of those materials rattan. To do so would be contrary to the common meaning ascribed to cane and reed, as has hereinbefore been so thoroughly set out. Therefore, we hold that the principle set forth in the *Nootka* case, *supra*, is not applicable here.

We are further of opinion that the merchandise at bar is properly dutiable under the provisions of paragraph 412 as being in chief value of wood, as claimed by appellant. In that respect, we believe what was stated in the case of *Steinhardt* v. *United States*, 9 Ct. Cust. Appls. 62, T. D. 37940, is apposite here. In that case it was said as follows:

We think that lexicographers and common knowledge warrant us in saying that wood is a very broad term and includes not only material obtained from exogenous plants, but also like substances obtained from palms, from bamboo, which is a giant grass, and from some ferns which are herbaceous plants. . . .

Other authorities on this phase of the case and which are cited in the brief of counsel for appellant are *Steinhardt* v. *United States*, 8 Ct. Cust. Appls. 404, T. D. 37646; cane held to be a wood; *United States* v. *China Co.*, 71 F. 864; manufactures of bamboo held to be manufactures of wood; *McCoy* v. *United States*, (GA) T. D. 25644: birch-bark canoes held to be manufactures of wood.

For the reasons hereinbefore set out the judgment of the United States Customs Court is *reversed* and the case *remanded* for further proceedings consistent with this opinion.