SEARS, ROEBUCK AND CO. v. UNITED STATES (No. 4965) [1]

United States Court of Customs and Patent Appeals, January 9, 1959

*Lane, Young & Fox* (*William Whynman* of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*William J. Vitale* and *Richard H. Welsh*, trial attorneys, of counsel), for the United States.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Associate Judges

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, Abstract 61,834, overruling the importer's protest and sustaining the collector's classification of the merchandise involved herein under paragraph 1312 of the Tariff Act of 1930, as modified by T.D. 51802 and the Torquay Protocol to the General Agreement on Tariffs and Trade (GATT) T.D. 52739, as manufactures in chief value of rayon, not specially provided for, dutiable at the rate of 25 cents per pound, plus 35 per centum ad valorem. The importer claimed the merchandise properly dutiable under paragraph

---

[1] C. A. D. 701.

1554 of the Tariff Act of 1930, as modified by the Annecy Protocol to GATT, T.D. 52373, as supplemented by Presidential Proclamation, T.D. 52467, as "umbrellas, * * * covered with material other than paper or lace, not embroidered or appliqued," at the rate of 20 per centum ad valorem.

Paragraph 1312, as modified by T.D. 51802 and T.D. 52739, under which the merchandise was classified by the collector, reads as follows:

Manufactures of filaments, fibers, yarns or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding one inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synethetic textile, not specially provided for_____ 25 cents per lb. and 35% ad val.

Paragraph 1554, as modified by T.D. 52373 and T.D. 52476 reads:

Umbrellas, parasols, and sunshades, covered with material other than paper or lace, not embroidered or appliqued_____ 20% ad val.

The merchandise in issue is known as a "cotton food umbrella" or as just a "food umbrella." Appellant's witness testified that the function of the device is:

* * * to protect food from insects. It works on the principle of an umbrella. You place it over food outdoors or indoors, and it would prevent insects from getting onto the food.

The device in question is similar in shape to the umbrella customarily utilized to afford protection from rain or sun, with a shortened handle protruding from the convex surface thereof. The lateral surfaces of the object comprise a gauze-like material, the borders of which are extended so as to prevent insect penetration when the device is placed over the food, with its concave surface down.

The protective covering is supported by a plurality of ribs attached by means of a collar to the shortened handle. To open the "food umbrella" the handle is drawn through an opening in the top of the covering and the ribs are thereby extended, spreading the covering. The opened device hangs from a string attached to the protruding handle on its convex side rather than being supported by a lengthened shaft extending from the concave surface, as is customary in the umbrella of trade and commerce.

It was stipulated that the imported articles are in chief value of rayon and not covered with lace or paper. Government counsel further conceded at the hearing that the merchandise is not embroidered or appliqued.

The Customs Court sustained the collector's classification, relying upon various dictionary definitions and the authority of *United States* v. *China & Japan Trading Co., Limited,* 71 Fed. 864, CCA 2, to exclude the imported merchandise from the statutory definition of "umbrellas."

 The term "umbrellas" within paragraph 1554 of the Tariff Act of 1930 will be accorded its common meaning, since there is no evidence of a different commercial designation or an otherwise contrary legislative intent. We must accordingly determine whether the said term is commonly understood to refer to a particular type of structure regardless of use or whether the term encompasses both the structure and a particular function or use of the device. If it is the former, the merchandise at bar comes within the purview of the paragraph because it does possess most of the characteristics of the object commonly known as an umbrella. If it is the latter, it does not come within said paragraph provided that the use of an "umbrella" is only to protect from the adverse effects of rain or sun insofar as the term is employed in the act. Though paragraph 1554 is an *eo nomine* classification, of course, it does not follow that any and all articles called "umbrellas" will be so classified. See *R. F. Downing & Co.* v. *United States*, 141 Fed. 490; *Bredt et al.* v. *United States*, 65 Fed. 496.

In ascertaining the statutory meaning of "umbrellas" the Customs Court referred to the following definitions of "umbrella":

A. Webster's New International Dictionary (1956), at page 2757:

1. A shade, screen, or guard carried in hand for sheltering one from rain, sun, etc. It is of silk, cotton, or other fabric, extended on strips of steel, or other elastic material, fastened to a rod or stick, usually by pivots or hinges so as to allow of being opened and closed with ease.
2. Anything serving to screen, shelter, or protect.
3. An umbrella-shaped structure or device.
Of, pertaining to, or like, an umbrella; used for umbrellas.

B. Funk & Wagnalls New Standard Dictionary (1956) at page 2597:[2]

Umbrella—1. A canopy of silk, cotton, paper or other suitable fabric, supported on a radiating folding frame, and carried (usually) in the hand as a protection against the sun or rain. Small umbrellas, when used exclusively as a shelter from the sun, are called *sunshades or parasols*, and when used in all weathers, *en-tout-cas*.
Umbrellas, though seen in Egyptian and Assyrian sculptures, on Greek vases and figurines, and in medieval manuscripts, were not used in Europe as shelters from rain until the 18th century. In the East, as in Siam, they are emblems of royalty.

The lower court, in sustaining the collector, noted that the instant importation is neither a "shade, screen, or guard carried in hand for sheltering one from rain, sun, * * *" nor a "canopy of * * * suitable fabric, * * * carried (usually) in the hand as a protection against the sun or rain * * *." The importer, however, contends that the merchandise is "used as a cover to protect food from flies and insects and, consequently, it is an article 'serving to screen, shelter or protect,' " as defined in the second definition from Webster.

---

[2] This definition is identical to that appearing in the Standard Dictionary published in 1916.

██ The meaning of an *eo nomine* designation is determined as of the time of enactment of the tariff act. *Davies Turner & Co.* v. *United States,* 45 CCPA 39, C.A.D. 669. Of course, though the meaning of the said designation is thus fixed, that meaning will be held to embrace all articles subsequently created which come within its scope. *Davies Turner & Co.* v. *United States, supra; United States* v. *Inter-Maritime Forwarding Co., Inc.,* 41 CCPA 107, C.A.D. 537; *Nylos Trading Company* v. *United States,* 37 CCPA 71, C.A.D. 422.

The above-mentioned definition relied upon by appellant was added to Webster's International Dictionary subsequent to the enactment of the Tariff Act of 1930.[3] That definition may not, in accordance with the cases cited above, be utilized to expand the meaning of "umbrellas" at the date of enactment of the 1930 Act, but solely to clarify the meaning at that time.

The definitions which were in existence at the time of the passage of the Tariff Act of 1930, indicate that umbrellas were considered solely objects of characteristic structure *used* "as a protection against the sun or rain * * *."[4]

The case of the *United States* v. *China & Japan Trading Co., Limited, supra,* which involved large multi-colored paper umbrellas imported from the Orient, is a significant indication of the common meaning of "umbrellas." The court stated, in holding the merchandise was not "umbrellas" within the meaning of paragraph 470 of the tariff act of 1890:

> The so-called "umbrellas" are a many-colored, fantastically decorated article, imported from Japan and China, of huge size, the frame of which is covered with paper, the paper being the component material of chief value in the article. It resembles the ordinary umbrella, substantially as the miniature ones similarly made, and imported from the same countries, which are used by women for hairpins, resemble parasols. No one pretends that they are the umbrella of trade and commerce, and dealers in those articles do not keep them. They are called "umbrellas" for convenience, but they are not used or designed for use as such. They might as appropriately be called "rainbows."

The court in that case predicated the decision on the use of the article and in so doing affirmed the lower court which stated that they could not be "used to protect individuals from sun and rain"

---

[3] Solely the first enumerated definition appeared in Webster's New International Dictionary in 1932 (Copyright, 1930), at page 2228.

[4] See also the Century Dictionary and Cyclopedia, Vol. X, (1911), wherein "umbrella" is defined at p. 6574 as:

"1. A portable shade, screen, or canopy which opens and folds, carried in the hand for the purpose of sheltering the person from the rays of the sun or from rain."

The Encyclopedia Brittanica, 11th Edition, Vol. XXVII (1911), page 576, defined "umbrellas" as follows:

A portable folding protector from rain (Fr. *parapluie*), the name parasol being given to the smaller and more fanciful article carried by ladies as a sunshade, and the *en-tout-cas* being available for both purposes. Primarily the umbrella (*ombrella*, Ital. dim. from Lat. *umbra*, shade) was a sunshade alone—its original home having been in hot, brilliant climates.

and therefore could not be classified as umbrellas, *China & Japan Trading Company* v. *United States*, 66 Fed. 733. Congress has re-enacted that paragraph five times since 1896 without indicating a change in the meaning of the statutory term "umbrellas" set forth in that case, although it has excluded those "umbrellas" covered with paper or lace or those which are embroidered or appliqued.

In the *United States* v. *Great Pacific Co., Shui Tai & Co.*, 23 CCPA 319, T.D. 48192, the court stated:

A common meaning, having been once established and determined by a court, will be presumed to continue until the language is changed by subsequent legislation.

This presumption has not been rebutted; in fact, all available aids to construction affirm it.

We have found no case nor has appellant cited any which support its contention that Congress intended the term "umbrella" in paragraph 1554 to include items having some of the mechanical features of the article commonly known as an umbrella but used for a different purpose than protection against rain or sun, nor any authorities holding that the Congress intended the term to cover any merchandise that was not manufactured for this purpose.

The cases that were cited by appellant are clearly distinguishable since they are illustrative of the proposition that an *eo nomine* designation covers all forms of the named article. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966, and we have found that the imported merchandise does not come within the common meaning of the statutory term, regardless of its form, because the meaning of the term is predicated upon the use of the articles.

In view of the above, we therefore *affirm* the decision of the lower court.