**Slip Op. 00-4**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____

|  |  |  |
|---|---|---|
|  | : |  |
| GENERAL ELECTRIC COMPANY - | : |  |
| MEDICAL SYSTEMS GROUP, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : | Before: WALLACH, Judge |
| v. | : | Court No.: 93-11-00750 |
|  | : |  |
| UNITED STATES, | : |  |
|  | : |  |
| Defendant. | : |  |

_____:

[On classification of two types of multiformat cameras, summary judgment for Defendant concerning classification within Headings 8479, 9006 and 9022.]

Decided: January 6, 2000

Wasserman, Schneider, Babb & Reed (Patrick C. Reed), for Plaintiff.

David W. Ogden, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin), for Defendant.

**OPINION**

**I.**

**Introduction**

Plaintiff, General Electric Company – Medical Systems Group ("GE"), commenced this action challenging the classification of its imported merchandise by Defendant, the United States Customs Service ("Customs"). This dispute concerns the classification by Customs of certain multiformat cameras ("MFCs") imported by Plaintiff between 1992 and 1994. Statement of

1

Uncontested Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Statement") ¶¶ 2, 5; Defendant's Response to Plaintiff's Statement of Material Facts Genuinely Not in Issue ("Defendant's Response") ¶¶ 2, 5; Complaint ¶ 3 and Schedules A-D; Answer ¶ 3. This Court has jurisdiction under 28 U.S.C. § 1581(a) (1994).

Currently before the Court are the parties' cross-motions for summary judgment. The Court finds that there is no genuine issue of material fact relevant to the classification of the MFCs, and that this case is ripe for disposition under USCIT Rule 56. Because the MFCs are fixed focus cameras within the meaning of the terms of the tariff provision applied by Customs, the Court denies Plaintiff's motion for summary judgment, and grants summary judgment in favor of Defendant on all issues.

## II.

## Background

## A.

## Procedural Background

Customs classified the MFCs under Harmonized Tariff Schedule of the United States ("HTSUS") Subheading 9006.59.40, as:

> 9006   Photographic (other than cinematographic) cameras; photographic flashlight apparatus and flashbulbs other than discharge lamps of heading 8539; parts and accessories thereof:
>
>        Other cameras:
>
> 9006.59         Other:
>
> 9006.59.40         Fixed focus,

at a duty rate of 4% <u>ad valorem</u>. Complaint ¶ 6; Answer ¶ 6.

GE filed its Consolidated Complaint in this action as of May 22, 1996, challenging Customs' determination. GE claimed that the MFCs are more properly classified under HTSUS Subheading 9006.59.90 as:

9006　Photographic (other than cinematographic) cameras; photographic flashlight apparatus and flashbulbs other than discharge lamps of heading 8539; parts and accessories thereof:

　　　　　　Other cameras:

9006.59　　　　　Other:

　　　　　　　　Other than fixed focus:

9006.59.90　　　　　　Valued at over $10 each,

at a duty rate of 3% ad valorem. Complaint ¶ 7. GE also claimed, in the alternative, that the MFCs should be classified under HTSUS Subheading 8479.89.90, which provides for:

8479　Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof:

　　　　　　Other machines and mechanical appliances:

8479.89　　　　　Other:

8479.89.90　　　　　Other,

at a duty rate of 3.7% ad valorem. Complaint ¶ 18; Defendant's Memorandum in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Mem.") at 2.

On August 31, 1998,[1] GE moved for partial summary judgment on its 9006.59.90 claim. Customs opposed GE's motion, and cross-moved for summary judgment dismissing both of

---

[1]This case was transferred to the undersigned on May 7, 1999.

GE's claims. In its Reply, GE did not oppose Customs' cross-motion as to GE's 8479.89.90 claim. However, in connection with its Reply, GE filed a proposed Amended Consolidated Complaint (the "Proposed Amended Complaint"), which incorporated a new claim that the imported articles are more properly classified under HTSUS Subheading 9022.90.60, as:

9022    Apparatus based on the use of X-rays . . ., whether or not for medical, surgical, dental or veterinary uses, including radiography or radiotherapy apparatus, X-ray tubes and other X-ray generators, control panels and desks, screens, examination or treatment tables, chairs and the like; parts and accessories thereof:

9022.90      Other, including parts and accessories:

     ***
        Parts and accessories:

     ***
         Other:

9022.90.60                        Of apparatus based on the use of x-rays,

at a duty rate of 2.1% ad valorem. Proposed Amended Complaint ¶ 7. Although GE proceeded to brief this issue, it did not file either a motion for leave to amend under USCIT Rule 15(a), nor did it amend its Motion for Partial Summary Judgment.

**B.**

**Undisputed Facts**

There is no dispute between the parties as to the basic characteristics of the imported articles in question. The MFCs at issue are accessories to computerized tomography ("CT") scanner systems and magnetic resonance imaging ("MRI") machines. Plaintiff's Statement ¶ 5, 11; Defendant's Response ¶ 5; Declaration of Joseph L. Getchel ¶ 11. After the CT or MRI scanner system generates a cross-sectional image of a patient, that image can be displayed on a

cathode-ray tube ("CRT") monitor which is located inside the MFC. Plaintiff's Statement ¶¶ 5, 7; Defendant's Response ¶¶ 5, 7. The MFC can then be used to produce a hard-copy photograph of the image displayed on the CRT monitor located inside the MFC. Plaintiff's Statement ¶¶ 5, 8; Defendant's Response ¶¶ 5, 8. The MFC only takes pictures of the images displayed on the CRT. The imported articles at issue consist of two models of MFC, known as the MFC-II and the MFC-III. Plaintiff's Statement ¶ 5; Defendant's Response ¶ 5.

The lens assembly in each MFC is set in a fixed position by the manufacturer. Defendant's Statement of Additional Material Facts as to Which There Are No Genuine Issues to be Tried ("Defendant's Statement") ¶ 1; Plaintiff's Reply to Defendant's Statement of Additional Material Facts as to Which There Are No Genuine Issues to be Tried ("Plaintiff's Reply") ¶ 1. However, the clarity of the image produced by both types of MFC can be altered by adjusting the distance between the lens and the film plane by raising and lowering the lens assembly. Plaintiff's Statement ¶ 13; Defendant's Response ¶ 13. Such adjustments are not made for each exposure, but are made either at the factory during manufacture or at the time of periodic system maintenance and service. Defendant's Statement ¶¶ 2, 5; Plaintiff's Reply ¶¶ 2, 5. Focus adjustments are made only by trained service technicians, and not by the operators of the CT scanner system for which the MFC is an accessory. Defendant's Statement ¶¶ 3, 4; Plaintiff's Reply ¶¶ 3, 4.

The MFC-III also is equipped with a focus ring which adjusts the small image lens of the MFC-III. Plaintiff's Statement ¶ 14; Defendant's Response ¶ 14. This focus ring is adjusted at the factory and then sealed with a silicone sealant. Defendant's Statement ¶ 9; Plaintiff's Reply ¶ 9.

5

The image on the CRT monitor screen, located inside both MFCs, may also be adjusted to be either clear or blurry. Plaintiff's Statement ¶ 12; Defendant's Response ¶ 12; Defendant's Statement ¶ 7; Plaintiff's Reply ¶ 7. However, even if the image on the CRT monitor is blurry, the MFC can take a clear picture of that blurry image. Defendant's Statement ¶ 8; Plaintiff's Reply ¶ 8.

## III.

## Analysis

## A.

## Standard of Review

Under USCIT R. 56(d), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In resolving disputes concerning tariff classification, the courts have generally referred to our analysis as a two-step process: first, construe the relevant tariff classifications; and second, determine under which of the properly construed tariff headings the merchandise at issue falls. Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir.1998). The first step in this process is a question of law, while the second step is generally referred to as a factual inquiry. Id. As the Court of Appeals for the Federal Circuit recently noted in Bausch & Lomb, however, where there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is, summary judgment is appropriate because the ultimate issue of classification is then entirely a legal question. Id. As the Court stated:

there is nothing inherently incompatible with the summary judgment process if the court construes the relevant (competing) classification headings, a question of law; determines what the merchandise at issue is, a question of fact; and then, if there is no genuine dispute over the nature of the merchandise, adjudges on summary judgment the proper classification under which it falls, the ultimate question in every classification case and one that has always been treated as a question of law.

Id. at 1365-66. The parties do not dispute any issue of material fact. To the extent that the questions presented by the parties' motions implicate the factual correctness of Customs' classification decision, GE must overcome the statutory presumption of correctness for Customs decisions, 28 U.S.C. § 2639(a)(1) (1994). To the extent that the questions presented are purely legal ones of statutory construction, that presumption does not apply. Universal Electronics Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997); Blakley Corp. v. United States, ___ CIT ___, 15 F. Supp. 2d 865, 869 (1998). The Court must in the latter instance examine both parties' claimed classifications and independently determine which of them is correct or, if neither, take further measures to determine the correct classification. 28 U.S.C. § 2643(b) (1994); Jarvis Clark Co. v. United States, 733 F.2d 873 (1984).

**B.**

**The MFCs Are Fixed Focus Cameras
Within the Meaning of HTSUS 9006.59.**

The principal issue presented by this case is whether MFCs are "fixed focus" cameras within the meaning of HTSUS 9006.59. Both parties agree on three central facts: (1) the focus of the MFCs can be altered, Plaintiff's Statement at ¶ 13, Defendant's Response ¶ 13; (2) such alterations are not performed at the time the camera is used to produce photographs, Defendant's Statement ¶¶ 2, 5, Plaintiff's Reply ¶¶ 2, 5; and (3) such alterations are performed only at the

7

time of manufacture or service by qualified service technicians, Defendant's Statement ¶¶ 2, 3, Plaintiff's Reply ¶¶ 2, 3. Based on these facts, Plaintiff contends that the MFCs are not "fixed focus" cameras within the meaning of HTSUS 9006.59 and its subheadings. Plaintiff advances several arguments, each of which derives principally from Plaintiff's contention that the term "fixed focus," under HTSUS 9006.59, extends solely to box-type cameras such as the Kodak Brownie, a camera produced for amateur photographers beginning early in this century. This Court, however, rejects Plaintiff's arguments and grants summary judgment in Defendant's favor.

**1.**

**The Common and Popular Meaning
of the Term "Fixed Focus" Extends to the MFC.**

The proper classification of merchandise is governed by the General Rules of Interpretation ("GRI") to the HTSUS. See Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir.1998). GRI 1 provides that, "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ." GRI 1, HTSUS; see also Orlando Food Corp., 140 F.3d at 1440; Harmonized Commodity Description and Coding System, Explanatory Notes (1st ed. 1986) ("Explanatory Notes") at 1 ("[T]he terms of the headings and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification[.]"). Here, the parties each have asserted claims that the subject imports should be classified under heading 9006, HTSUS, but dispute the correct subheading. Therefore, the Court reviews the parties' proffered classifications pursuant to GRI 6. See GRI 6, HTSUS ("For legal purposes, the classification of goods in the subheadings of a

8

heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the [preceding GRIs], on the understanding that only subheadings at the same level are comparable.").

The subheadings here at issue hinge upon the meaning of the term "fixed focus camera". Neither the HTSUS nor its legislative history defines "fixed focus camera." "When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common meaning." Mita Copystar America v. United States, 21 F.3d 1079, 1082 (Fed. Cir.1994) (citing Lynteq, Inc. v. United States, 976 F.2d 693, 697 (Fed. Cir.1992)); Marubeni America Corp. v. United States, 35 F.3d 530, 534 (Fed. Cir. 1994) (tariff terms are construed in accordance with their common and popular meaning, in the absence of contrary legislative intent). To ascertain the common and popular meaning of a tariff term, "the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." Id. (quoting Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988)).

Plaintiff contends that the "common and popular meaning" of the term "fixed focus" limits its application to box-type cameras. Plaintiff cites the following sources in support of its argument:

> fixed-focus: not provided with a focusing adjustment – used of a camera having a lens of small aperture focused at about 8 to 15 feet. Webster's Third New International Dictionary of the English Language, Unabridged (rev. ed. 1981).

> Fixed Focus. On many of the cheaper cameras, there is no focusing movement and the lens is at a fixed distance from the film. With such fixed focus cameras, all objects beyond about 7 feet from the camera are in reasonably sharp focus. Focal Encyclopedia of Photography 623 (2d ed. desk ed. 1969).

9

FIXED-FOCUS CAMERA  Typically, an inexpensive camera that has a fixed point of focus (usually at the hyperfocal distance) and no focusing adjustments.  A small aperture (f/8-f/11) produces a relatively large depth of field.  Focal Encyclopedia of Photography – Third Edition 79 (3d ed. Leslie Stroebel & Richard Zakia 1993).

Plaintiff's Brief in Support of its Motion for Partial Summary Judgment at 13.  Plaintiff also cites to various descriptions of box-type cameras for comparison.[2]  Defendant cites additional definitions of "fixed focus":

Fixed-focus - Applied to cameras and other optical instruments on which the position of the lens is established by the manufacturer and cannot be altered by the user, as with some aerial, fingerprint, data-recording, and amateur cameras. . . .  Stroebel, Leslie and Todd, Hollis, Dictionary of Contemporary Photography, Morgan and Morgan Press, 1974.

Fixed-focus lens:  A lens that has been focused in a fixed position by the manufacturer.  The user does not have to adjust the focus of this lens.  A Glossary of Photographic Terms, Eastman Kodak Company.

Defendant's Mem. at 14-15.  Customs also submits a declaration by Andrew Davidhazy, a professor in the Imaging and Photographic Technology Department in the School of Photographic Arts and Sciences, College of Graphic Arts and Photography at the Rochester Institute of Technology.  Mr. Davidhazy offers the following definition:

A fixed focus camera is a camera that is not designed to have its focus adjusted from one exposure to the next; it is a camera for which such regular adjustments are not needed and for which the operator is not encouraged or able to change the focus of the lens on a routine basis.  Such cameras are designed to operate at a fixed image magnification, that is, they are designed so that the distance between the image (where the film is placed) and the object (the photographic subject) remains constant.

Davidhazy Decl. ¶ 8.

---

[2]  Neither party has submitted any evidence to indicate whether box-type cameras such as the Kodak Brownie are susceptible of focus adjustment by service technicians.

10

Professor Davidhazy has also provided reference materials, the veracity of which is unchallenged by Plaintiff. These materials show the existence of an array of sophisticated and expensive cameras, such as Air Force aerial cameras and cameras for photographing fingerprints and blood stains, which do not resemble box cameras but are nonetheless fixed focus in nature.

Plaintiff's proffered definitions do not limit the term "fixed focus"[3] to inexpensive box-type cameras. While such cameras are invoked as exemplars of the defined term, the underlying definitions contain nothing to exclude the MFC from their ambit. The definitions of fixed focus are functional in nature, they extend to the imported articles, and the common meaning of the term at issue embraces the MFC.

**2.**

**Plaintiff Has Failed to Demonstrate
That the Drafters of the Torquay Protocol
Intended to Exclude Items Other than "Box-Type" Cameras
from Coverage by the Term "Fixed Focus".**

Plaintiff then argues that the negotiators of the Torquay Protocol, from which HTSUS 9006.59 is derived,[4] intended the term "fixed focus cameras" to apply only to box-type cameras.

---

[3]     Plaintiff has submitted a related argument, based on the construction of the individual words "fixed" and "focus". The primary definition of "fixed", as set forth in Webster's Third New International Dictionary of the English Language, Unabridged (1986), is "securely placed or fastened". The evidence presented to this Court unequivocally demonstrates that the focus of the MFCs cannot be adjusted without "unfastening" the components of the MFC which hold that focus in place. To raise or lower the lens assembly, the service technician must add or remove the focus spacers which hold the lens assembly in place on the mounting shafts. Getchel Decl. ¶ 18. To rotate the focus ring, the service engineer must remove the silicone rubber sealant which holds that focus ring in place. Getchel Decl. ¶ 19. Thus, analysis of the common and popular meaning of the individual words brings this Court to the same conclusion as that reached through analysis of the phrase "fixed focus".

[4]     As Plaintiff notes, the HTSUS provisions at issue in this case did not originate in the HTSUS or in the international text which forms the source for the HTSUS. Rather, when the

11

The Torquay Protocol prompted the addition of Heading 1551 to the Tariff Act of 1930.

Heading 1551 provides, in pertinent part:

> 1551    Cameras, photographic, and parts thereof, nspf:
>
> Cameras valued $10 or more each (except fixed-focus cameras and motion-picture cameras)
>
> Motion-picture cameras and parts thereof
>
> Fixed-focus cameras and parts thereof
>
> Other:

Plaintiff cites the contemporaneous report of the U.S. Department of State, which recounts that:

> Photographic cameras, other than box type (set focus) and motion picture cameras n.s.p.f., of which the lens is not the component of chief value, valued at $10 or more each (par. 1551). Germany was granted a reduction in the rate of duty from 20 percent to 15 percent ad valorem on cameras, other than box type and motion picture cameras, of which the lens is not the component of chief value. The concession is applicable only to cameras valued at $10 or more each.
> . . . Some of the imported German cameras are high-priced and include features not available in domestic cameras. The demand for such cameras is limited, however, and imports compete only in a limited degree with domestic production.

Analysis of Torquay Protocol of Accession, Schedules, and Related Documents, General

Agreement on Tariffs and Trade: Negotiated at Torquay, England, September 1950 - April 1951

(1951).

---

United States converted from the TSUS to the HTSUS, it created these subordinate provisions as successors to TSUS items 722.06 through 722.16. See U.S. Int'l Trade Comm'n Pub. No. 1400, Conversion of the Tariff Schedules of the United States into the Nomenclature Structure of the Harmonized System: Report on Investigation No. 332-131 Under Section 332 of the Tariff Act of 1930, Annex III: Cross-Reference from Converted Tariff Schedule to Present TSUSA, at 868 (1983). The relevant TSUS provisions, in turn, were successors to provisions in the Tariff Act of 1930, as supplemented in 1951 by Presidential Proclamation No. 9229, which implemented the tariff provisions of the Torquay Protocol to the General Agreement on Tariffs and Trade. T.D. 52739, 86 Treas. Dec. 121 (1951).

Plaintiff's argument regarding the drafters' intentions is undercut by, and ultimately fails because of, the plain language of the provision actually adopted, and by the subsequent evolution of more multifaceted tariff provisions regarding cameras. First, as Customs notes, the drafters of the Protocol chose to utilize the term "fixed focus" camera, rather than "box camera" – although the associated Notes demonstrate that the drafters were familiar with the term "box camera." The Court must therefore presume that the drafters would have used the more specific term had they intended that the provision be limited as Plaintiff asserts. Compare Russello v. United States, 464 U.S. 16, 23 (1983) (where particular language is included in one section of a provision and omitted from another provision of the same Act, it is generally presumed that Congress did so intentionally and purposely). See also Blum v. Stenson, 465 U.S. 886, 896 (1984) (analysis of legislative history is proper only to solve, not to create, an ambiguity). The drafters chose to use the more general term "fixed focus." This subsequently created article falls squarely within that general definition. See Sears Roebuck & Co. v. United States, 46 C.C.P.A. 79, 82 (1959) (once definition of tariff term is fixed, all subsequently created articles will be held to fall within its scope).

Customs also notes, persuasively, that the modern-day successors of the box camera, the "point and shoot" and disposable cameras, are not classified under HTSUS 9006.59 at all. Rather, those cameras are classified under the more specific provisions of HTSUS 9006.53.00 and 9006.52.10. Were Plaintiff's argument to prevail, it appears that HTSUS 9006.59 would be rendered entirely superfluous, as it would be limited to box-type cameras, which have been carved out now into separate provisions. The Court declines to construe the HTSUS in a manner which would render superfluous the HTSUS provision at issue. See Pac Fung Feather Co., Ltd.

13

v. United States, 19 CIT 1451, 911 F. Supp. 529, 536 (1995) ("It is a fundamental principle of statutory construction that a statute should be interpreted so as not to render one part inoperative.").

Rather, the "subsequently created article doctrine" supports Customs' conclusion that these imported articles fall within the general term selected by the drafters. Indeed, as noted above, this is not the only subsequently created article to fall within the reach of the term "fixed focus" camera. Customs has submitted undisputed authority that several other sophisticated cameras, such as aerial, fingerprint and data-recording cameras, are also commonly recognized as having a fixed focus. Exhibits 3 and 4 to Defendant's Mem.

Based on the undisputed evidence submitted by the parties regarding the characteristics of the imported merchandise, the Court finds that the MFCs fall within the common and popular meaning of the term "fixed focus camera", as well as within the meaning of the term as used by the drafters of the antecedents of HTSUS 9005.59.40.[5]

---

[5]     The Court's conclusion that the MFCs are fixed focus cameras also requires that the Court grant the Government's cross-motion for summary judgment on GE's alternative claim that the MFCs should be classified under HTSUS 8479.89.90. HTSUS 8479.89.90 is a "basket" provision, which can only apply if the merchandise does not fall within any more specific provision. See E.M. Chemicals v. United States, 20 CIT 382, 923 F. Supp. 202, 205-6 (1996). Because the Court finds that the MFCs were properly classified within the more specific provision of 9006.59.90, it must dismiss GE's alternative claim.

    This determination is reinforced by Section Note 1 for Section XVI, which embraces Heading 8479. This Section Note provides, in pertinent part, that "This section does not cover . . . (m) Articles of chapter 90 . . . ."

14

## C.

### Plaintiff Has Failed To Demonstrate That The MFCs
### Should Be Classified as Accessories of X-Ray Apparatus.

In connection with its Reply Brief, GE submitted a Proposed Amended Complaint,[6]

adding a claim that the MFCs are properly classified as accessories of apparatus based on the use

of x-rays, under HTSUS 9022.90.60.  Although the time to file an amended complaint as of right

had passed, see USCIT Rule 15(a), GE submitted the Proposed Amended Complaint without

motion for leave to amend.  In the absence of such a motion, the Court is not required to consider

the amended complaint.  Taiyuan Heavy Machinery Import and Export Corp. v. United States,

1999 WL 816108 at *10 (CIT October 6, 1999) (declining to consider amended complaint in

light of plaintiff's failure to seek leave to amend); accord Calderon v. Kansas Dept. of Social and

Rehabilitation Svces., 181 F.3d 1180, 1185-86 (10th Cir. 1999) ("a request for leave to amend

must give adequate notice to the district court and to the opposing party of the basis for the

proposed amendment before the court is required to recognize that a motion for leave to amend is

before it").  GE's suggestion that its amended complaint should be accepted under Rule 15(b)

similarly falls short of the mark, as Rule 15(b) by its terms applies only where a trial has been or

is being held.  No trial has been held in this matter.  GE also failed to submit an amended motion

for summary judgment, or to move for leave to amend its motion.  Such leave of Court is

required under USCIT Rule 56(c).  Thus, GE's additional claim, and its purported motion for

summary judgment on that claim, are not properly before this Court.

---

[6]     In its Reply Brief, GE asserted that it was unable to identify the availability of this tardily added claim until the Government filed its papers opposing GE's motion for summary judgment.  Plaintiff's Reply Brief at 4-5.  The Court rejects GE's assertion that it could not identify what it considered to be the nature and proper categorization of its own equipment.

Nevertheless, in recognition of the Court's duty to "find the correct result", Jarvis Clark Co. v. United States, 733 F.2d 873 (1984), the Court has reviewed GE's belatedly proffered alternative classification, and concludes that classification under HTSUS 9022.90.60 is not the "correct result".

**1.**

**Plaintiff Has Failed to Demonstrate
That the MFCs are "Solely or Principally"
for Use With X-Ray Apparatus.**

As a threshold matter, Plaintiff has failed to demonstrate that the MFCs fall within the terms of Heading 9022.90.60. The Explanatory Notes[7] for Heading 9022 provide that parts and accessories which are "solely or principally" for use with x-ray apparatus fall within the ambit of this heading. On this determination of fact regarding the nature of the imported articles, the presumption is that Customs' original classification decision was correct. See Universal Electronics, 112 F.3d at 491-92 ("the presumption of correctness certainly carries force on any factual components of a classification decision, such as whether the subject imports fall within the scope of the tariff provision"). To prevail, Plaintiff must overcome this presumption and demonstrate that its equipment is "solely or principally" for use with x-ray equipment. Plaintiff has proffered no evidence to this effect, however, and relies on the Government's agreement that the MFCs are accessories of CT scanner systems. See Plaintiff's Statement ¶ 5; Defendant's Response ¶ 5.

---

[7]     As an aid to determining the meaning of a particular tariff term, the Court may look to the Explanatory Notes which, although not legally binding upon the Court, generally are indicative of the proper interpretation of the HTSUS. Sharp Microelectronics Technology, Inc. v. United States, 20 CIT 793, ___, 932 F. Supp. 1499, 1502 (1996) (citing Pima Western, Inc. v. United States, 915 F. Supp. 399, 400-01 (CIT 1996)).

This agreement indicates that the MFCs are used in connection with CT scanner systems, but it does not establish that those MFCs are exclusively or primarily so used. Nor has this Court located any evidence in the record addressing this issue. To the contrary, in his Declaration submitted in support of Plaintiff's motion, Mr. Getchel specifically stated that MFCs are also used in connection with MRI equipment, which creates images using magnetic resonances, and not x-rays. Getchel Decl. ¶11. Based on the undisputed facts before the Court, the MFCs are not "solely or principally" used with x-ray equipment. Accordingly, this Court would reject GE's contention, if it had been properly raised.

Because the Court concludes that GE has failed to make a prima facie showing that the MFCs fall within the parameters of Heading 9022, a comparison between Headings 9006 and 9022 is unnecessary. Nonetheless, such a comparison reinforces the conclusion that classification within Heading 9022 is improper.

**2.**

**The Chapter Notes to HTSUS Chapter 90
Foreclose Classification of the MFCs Within Heading 9022.**

Plaintiff contends that the MFCs should be classified under HTSUS 9022.90.60 as "parts and accessories of apparatus based on the use of x-rays" rather than as fixed focus cameras. Plaintiff's contention is foreclosed as a matter of law, however, by Note 2 to Chapter 90, which provides that "parts and accessories which are goods included in any of the headings of this chapter . . . are in all cases to be classified in their respective headings[.]" The MFCs are, as Plaintiff concedes, cameras, and as such are included in Heading 9006 of Chapter 90:

"Photographic (other than cinematographic) cameras . . . ."  Under GRI 1, this Chapter Note is dispositive of GE's claim.  This claim, however, suffers from additional infirmities.

**3.**

**The MFCs Are Properly Classified
Under the More Specific Heading of 9006,
Rather Than the Basket Provision of 9022.90.60.**

GE claims that, because the MFCs contain a CRT monitor which is used in conjunction with CT systems, which systems utilize x-rays, the MFCs are more specifically provided for in Heading 9022.  In support of its position, GE cites the Explanatory Notes to Heading 9022, which state that x-ray apparatus and a specialized camera which are presented together at the same time should be classified under Heading 9022, while separately presented cameras shall be classified under Heading 9006.  Explanatory Notes at 1624 (heading 90.22, note (I)(A)(3)).

Plaintiff has failed, however, to submit any evidence which would indicate that any "x-ray apparatus" is "presented with" those of the MFCs which are destined for use with CT systems (as opposed to those which are destined for use with MRIs and, as detailed above, are ipso facto excluded from Heading 9022).  While the parties have stipulated that the MFCs contain an internal monitor, no evidence has been submitted which would indicate that those monitors are "x-ray apparatus."  This Court has been provided with nothing to indicate that the monitors or any other component imported with the MFCs are capable of creating an x-ray scan.  In the absence of such proof, this Court must conclude that Plaintiff has failed to even attempt to overcome the presumption in favor of Customs on this factual issue, and that the MFCs are

18

"separately presented cameras" properly classified under Heading 9006.[8]  Indeed, Note 2 of the Explanatory Notes to Chapter 90 further bolsters this conclusion, by indicating that "a photographic camera falls in heading 90.06 even if it is of a kind designed for use with another instrument. . . ."

Because Plaintiff has failed to demonstrate the applicability of Heading 9022 to the MFCs, and because the MFCs fall within the more specific provisions of Heading 9006, the Court rejects Plaintiff's arguments under Heading 9022.


## IV.

## CONCLUSION

For the foregoing reasons, Defendant's Cross-Motion For Summary Judgment is granted in full, and Plaintiff's Motion For Summary Judgment is denied.


_____
Evan J. Wallach, Judge


Date:   January 6, 2000
        New York, New York

---

[8]      Because the MFCs fall wholly outside the provisions of Heading 9022, there is no need for an analysis under Rule 3 of the General Rules of Interpretation.